336 So.2d 982 (1976)
CITY OF LAFAYETTE, Plaintiff-Appellee,
v.
David E. BLACK, Sr., and David E. Black, Jr., Defendants-Appellants.
No. 5565.
Court of Appeal of Louisiana, Third Circuit.
August 13, 1976.
Rehearing Denied September 20, 1976.
Writ Refused December 1, 1976.
*983 Edwards, Stefanski & Barousse by Homer E. Barousse, Jr., Crowley, for defendants-appellants.
Ronald J. Judice, Lafayette, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
The City of Lafayette instituted this suit to enjoin defendants, David E. Black, Sr., and David E. Black, Jr., from using two lots of land, located in Lafayette, for any purposes other than those permitted by a zoning ordinance of that city. The trial court rendered judgment in favor of plaintiff. Defendants appealed.
The property affected by this suit is described as follows: Lots 18 and 19 of the Anna Belle Subdivision of the City of Lafayette, Louisiana.
The issues presented are (1) whether the two lots involved here were being used for a commercial purpose at the time the zoning ordinance was adopted, with the result that defendants are entitled to continue to use those lots for that purpose, and (2) whether the city is barred from maintaining this action by prescription of two years, under LSA-R.S. 9:5625.
David E. Black, Sr., purchased Lots 16, 17, 33, 34 and 35 of the Anna Belle Subdivision of the City of Lafayette, Louisiana, in July, 1968. Shortly thereafter, he began using those lots for the operation of a pet shop, which included the sale of small marsh buggies. The lots have been used for that purpose continuously since that time. The senior Mr. Black has employed his son, David E. Black, Jr., to work as manager of the business since 1968 or 1969.
On November 10, 1972, the City of Lafayette adopted Comprehensive Zoning Ordinance No. 0191, which became effective on December 2, 1972. Under the provisions of that ordinance the five lots which Black acquired in 1968 were, and have continued to be, classified as "R-1A-Single Family Residence" property. The ordinance also classified and zoned Lots 18 and 19 of the Anna Belle Subdivision as "R-1A-Single Family Residence" property. Lots 18 and 19 of that subdivision were owned by Wallace L. Mouton at the time the zoning ordinance was adopted. Those two lots are located southwest of and adjacent to the property which Black had acquired earlier and which he was using for the operation of his pet shop. The classification of those lots for zoning purposes has not been changed.
The Lafayette Comprehensive Zoning Ordinance prohibits the use of property classified as "R-1A-Single Family Residence" for commercial purposes. We interpret it as prohibiting the use of property so classified for the operation of a pet shop or for the sale of vehicles. The ordinance, however, contains the following significant provision:

"EXISTING USES: The lawful use of any building or land existing at the time of the enactment of this Ordinance may be continued although such use does not conform with the provisions of this Ordinance."
On June 13, 1974, defendant Black purchased Lots 18 and 19 of the Anna Belle Subdivision from Wallace L. Mouton. Black has owned those lots continuously since that time.
This suit was filed on February 13, 1975. The City alleges that defendants are using Lots 18 and 19, which Black purchased from Mouton in 1974, for a purpose which is not permitted under the Lafayette zoning ordinance. It alleges the following facts as indicating defendants' intent to use and to continue to use the property for such a purpose:
"B. Defendants' present construction of an 8' wooden fence around the `residential *984 lots' joining them with the `Pet Shop Property';
"C. Recent placement of certain items of defendants' business stock in trade on portions of the `residential lots'."
Plaintiff concedes that defendants were using the five lots which Black purchased in 1968 for a non-conforming purpose at the time the zoning ordinance was adopted, and that they are entitled to continue to use those lots for that purpose. The City contends, however, that Lots 18 and 19 were not being used for a non-conforming purpose at the time the ordinance was adopted, and that the City is entitled to judgment enjoining defendants from using Lots 18 and 19 for a purpose other than one permitted by the ordinance.
Defendants contend that they have been using Lots 18 and 19 for the display, testing, demonstration and sale of marsh buggies since 1968, and that those two lots were being used for that purpose at the time the Lafayette zoning ordinance was adopted in 1972. They take the position that under those circumstances they are entitled to continue to use those lots for that purpose.
The evidence is conflicting as to whether defendants used Lots 18 and 19 for the display, testing, demonstration and sale of marsh buggies, or for any other non-conforming purpose, prior to and at the time of the adoption of the zoning ordinance. Three persons who live in that immediate area testified that those two lots were not used for commercial purposes at any time prior to 1974 when Black purchased them from Mouton. Two city employees whose duties were to enforce zoning regulations in Lafayette testified that they had not observed or heard of any non-conforming use of the property before Black purchased the two lots at issue here in 1974.
Both of the defendants, one employee of the pet shop and two former employees testified that the lots were used regularly prior to 1972 for the display, testing, demonstration and sale of vehicles in connection with the operation of the pet shop.
Wallace L. Mouton, who sold Lots 18 and 19 to Black in 1974, testified that he never leased the lots to Black and never consented to them being used for commercial purposes. He concedes, however, that he knew that the vacant lots were used by defendants at times to test or demonstrate vehicles, and that he did not object. He indicated also that Black sometimes used the extreme northern edge of Lot 18, where it abutted Lot 17 then owned by Black, to unload vehicles and to park them. Early in 1974, he decided to build a fence on the boundary line between his property and that owned by Black, and a survey which he had made to determine the location of that fence showed that Black had been encroaching over the boundary line, from 10 to 14 feet onto Lot 18, for the parking of his marsh buggies. After that survey was made, Mouton demanded that Black clear the line for the construction of the fence, and shortly thereafter the parties entered into an agreement whereby Mouton sold Lots 18 and 19 to Black.
The deed from Mouton to Black, dated June 13, 1974, contains a statement to the effect that Black had used the two lots since 1968 in connection with his business, with Mouton's knowledge and consent, that Mouton would not oppose the continued future use of the property for that purpose, and that Black would hold Mouton harmless from any loss or damage because of the latter's failure to oppose the continued use of the property for commercial purposes. Mouton stated that he was not aware of the fact that that statement was in the deed, and he denied that he agreed to not oppose Black's use of the land.
The trial judge found that prior to the adoption of the Lafayette zoning ordinance "Black intermittently parked some of his buggies on fourteen (14) or fifteen (15) feet of Lot No. 18 which adjoined his property," and that he "utilized to some extent Lots 18 and 19 for the purpose of demonstrating the marsh buggies." He concluded that the "small footage of Lot 18 that was used by Black for parking buggies at times could very well have appeared to the public as *985 being a part of his property," and that "the use of the property by Black was not sufficient to place the public on notice." On the basis of those findings, he rendered judgment in favor of the city enjoining defendants from continuing to use Lots 18 and 19 for purposes other than those permitted for properties classified as R-1A-Single Family Residence property.
We agree with the conclusions reached by the trial court.
The evidence shows that defendants were using Lots 18 and 19 for a commercial, or non-conforming, purpose at the time this suit was filed. They are not entitled to continue to use the lots for that purpose, however, unless the evidence shows that the lots were being used for such a purpose in November, 1972, when the Lafayette zoning ordinance was adopted.
The burden of proof rests on defendants to show that the property was being subjected to a non-conforming use at the time of the enactment of that ordinance. To successfully overcome that burden, we think defendants must prove not only that they were using the property for a non-conforming purpose at the time the zoning ordinance was enacted, but also that its use of the premises was such that the neighborhood knew at that time that the lots were being employed for that purpose. See McQuillin, Mun.Corp. (3rd Ed.), Vol. 8A, Sections 25.186 and 25.187; City of Sillsbee v. Herron, 484 S.W.2d 154 (Tex.Civ.App.1972).
Applicable here, we believe, is the following general statement of law contained in McQuillin Municipal Corporations:
"Public knowledge of a nonconforming use of land and dwellings generally is requisite to its legal protection against zoning restrictions. That is to say, an existing nonconforming use means a certain utilization of the premises so that they may be known to the neighborhood as being employed for a given purpose, e. g., the conduct of a business. Negative proof, while it may not be entitled to the same weight as positive proof in some respects, may have force to show that a particular use of land or buildings was not known in the neighborhood." (McQuillin, Mun.Corp. (3rd Ed.), Vol. 8A, Section 25.187).
We agree with the trial judge that the evidence fails to show that the use to which Lots 18 and 19 were being subjected in 1972, when the Lafayette zoning ordinance was adopted, was sufficient to enable the neighborhood to detect or to know that the property was being used for such purposes. We find that the property was not being used for a non-conforming purpose at the time the ordinance was adopted, and we thus conclude that there is no error in the judgment rendered by the trial court.
Defendants filed in this court an exception of prescription, alleging that the City of Lafayette is barred from maintaining this action by prescription of two years, under LSA-R.S. 9:5625. They point out that the zoning ordinance was adopted on November 10, 1972, and that this suit was instituted more than two years later, on February 13, 1975. They argue that defendants used the property for a non-conforming purpose prior to the adoption of that ordinance, and that this action is prescribed since it was instituted "more than two years from the first non-conforming use made by the defendant."
LSA-R.S. 9:5625A provides that all actions which may be brought by municipalities to require compliance with a zoning restriction imposed by the municipality "must be brought within two years from the first act constituting the commission of the violation." That statute also provides that:
". . . with reference to violations of use regulations all such actions, civil or criminal, . . .must be brought within two years from the date the . . . municipality . . . first had been actually notified in writing of such violation." (Emphasis added).
The evidence shows that the City of Lafayette has never been notified in writing of the violation of the use regulations relating *986 to Lots 18 and 19, and that it had no notice or knowledge of any alleged violation of the zoning ordinance with reference to those lots prior to the time Black purchased them in 1974.
We have found that Lots 18 and 19 were not being used for a non-conforming purpose when the Lafayette zoning ordinance was adopted. The evidence shows, we think, that those lots were not used for such a purpose until after Black purchased them in 1974. This suit was instituted within two years after that time. There thus is no merit to defendants' exception of prescription.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
AFFIRMED.