350 So.2d 233 (1977)
CITY OF LAKE CHARLES, Plaintiff and Appellee,
v.
James N. FRANK, Defendant and Appellant.
No. 6116.
Court of Appeal of Louisiana, Third Circuit.
August 30, 1977.
Maurice L. Tynes of Hunt, Godwin, Painter & Roddy, Lake Charles, for defendant and appellant.
McHale & Bufkin by Louis D. Bufkin and Michael K. Dees, Peter A. Ciambotti, Lake Charles, for plaintiff and appellee.
Before CULPEPPER, FORET and GUIDRY, JJ.
*234 CULPEPPER, Judge.
The City of Lake Charles filed this suit to enjoin James N. Frank from using a lot zoned residential (hereinafter referred to as Lot 22) as a parking lot for customers of his bar and lounge located on adjacent property. The defense is a prior non-conforming use. The district judge found that although Lot 22 had a prior non-conforming use for parking in connection with an auto repair shop and a construction business, this was not use of the same character as parking for a bar and lounge. Hence, the new use was enjoined as a violation of the zoning ordinance. Defendant appealed.
The facts are that Lot 22 was annexed to the city and was automatically zoned Residential in 1969. At that time, Mr. Okin Carvin, Sr. owned Lot 22, but from 1969 until February of 1973 it was used for parking for lounge customers, parking for an adjacent auto mechanics garage, and storage of vehicles used by defendant Frank's contracting business. Defendant bought Lot 22 from Mr. Carvin in August of 1974. The lot has never been changed from residential zoning.
Defendant's family had acquired Lots 4 and 5, which abut Lot 22 on the rear, in about 1965 and had operated a bar and lounge on these two lots until February of 1973, at which time the bar and lounge closed for a period of two years. During this two-year period, while the bar and lounge were closed, defendant used the building on Lots 4 and 5 as an office for his construction business, and he used adjoining Lot 22 for storage and for the parking of equipment and trucks used in his construction business. Also, a neighbor, who owned an automobile repair shop on adjacent property, used Lot 22 to park the cars on which he was working, as well as to store junked cars.
In January of 1975, defendant applied to the Lake Charles Zoning Commission to rezone Lots 4, 5 and 22 to permit the lounge which he planned to reopen on Lots 4 and 5 and parking on Lot 22. The Commission granted the request as to Lots 4 and 5 but denied it as to Lot 22.
In February of 1975, defendant reopened the lounge on Lots 4 and 5. Despite the fact that the city had refused to rezone Lot 22, defendant placed shell on it and started using it for parking in conjunction with his bar and lounge. The city seeks to enjoin this use of Lot 22.
Ordinance No. 4526, the comprehensive zoning law of the City of Lake Charles, was adopted in 1972. The pertinent provisions of this ordinance are contained in Article IX as follows:
"Section 1. Existing nonconforming uses.
"The lawful use of any building on land existing at the time of the enactment of this ordinance may be continued, although such use does not conform with the provisions of this ordinance."
* * * * * *
"Section 3. Extension.
"A nonconforming use shall not be extended or enlarged except when required to do so by law or by ordinance. . ."
* * * * * *
"Section 9. Discontinuance.
"Whenever a building on land used in whole or in part for nonconforming purposes becomes and remains vacant for a continuous period of six months, or when the operations normally carried on in such building or on such land have been discontinued for a period of six months, such nonconforming use shall not thereafter be reestablished and any future use shall be in conformity with the provisions of this ordinance."
Under the above quoted provisions of the ordinance, it is clear that any right to a prior nonconforming use of Lot 22 for parking in connection with the bar and lounge terminated when the operation of the lounge was discontinued from February of 1973 to February of 1975. Thus, the only nonconforming use, which can be urged by defendant as exempting Lot 22 from residential restrictions, is the use of Lot 22 for parking in connection with the automobile *235 repair shop on adjacent property and the use for parking in connection with defendant's construction business.
Defendant contends that his use of Lot 22 for the parking of vehicles in connection with the operation of the bar and lounge since May of 1975, is essentially the same as the use of the lot for the parking of vehicles in connection with the operation of defendant's construction business, and in connection with the operation of the automobile repair shop on adjacent property, and that therefore a prior nonconforming use of the property for commercial parking still exists and exempts Lot 22 from the residential zone restrictions.
On the other hand, the plaintiff contends that use for parking in connection with the operation of a construction business or an automobile repair shop is of a different character from use for parking in connection with the operation of a bar and lounge. Plaintiff argues that parking for lounge purposes is far more objectionable because lounge customers are loud and boisterous and they come and park their cars and leave late at night, thus disturbing those who live in the adjacent residential areas. The city contends that defendant has no prior nonconforming use which would permit parking for a bar and lounge.
The district judge held there is a "vast difference" between use for parking by customers of a bar and lounge and use for parking in conjunction with a construction business or an automobile repair garage. The district court pointed out that Section 6 of the zoning ordinance in question, which provides for Zone B-2 "Community Service District", allows commercial parking lots and parking garages, but does not permit bars and lounges where alcoholic beverages are served. Bars and lounges fall within Zone B-3.
Defendant cites several cases for the rule that an increase in the volume or intensity of a nonconforming use does not violate the zoning ordinance so long as such increase is not substantial and there is no enlargement of the area used nor change in the character of use. For instance, in City of Crowley v. Prejean, 173 So.2d 832 (La.App. 3rd Cir. 1965) the nonconforming use of a residential tract to rent space for one house trailer was held to permit the rental of space for two or more house trailers. Also, in Adrouny v. International City Bank & Trust Company, 266 So.2d 524 (La.App. 4th Cir. 1974) the prior nonconforming use of a residential lot for parking and driveways for bank customers was held not to be extended or enlarged within the meaning of the zoning ordinance by the use of the same property for a drive-through banking service. See the general discussion in 101 C.J.S. Zoning, §§ 191-193.
We find these cases are distinguished from the present matter. In the cited cases, there was a mere increase in the volume, amount or intensity of the nonconforming use. There was no change in the nature or character of the nonconforming use, as in the present case.
Counsel have not cited, nor have we found, any cases from the appellate courts of Louisiana dealing with the precise question of whether there has been a change in the quality or character of the nonconforming use. However, other states have established several general rules which we find persuasive. The general purpose of allowing nonconforming uses is to avoid the imposition of hardship on the owner of property already devoted to a use which is proscribed under the new zoning ordinance. However, provisions for the continuation of a nonconforming use should be strictly construed to secure their gradual elimination. See the general discussions in 101 C.J.S. Zoning §§ 181-182, and McQuillin, Municipal Corporations, 3rd Ed. Section 25.189. Of course, the burden of proof rests on the party urging a nonconforming use. City of Lafayette v. Black, 336 So.2d 982 (La.App. 3rd Cir. 1976).
Particularly applicable here is the general rule established in other jurisdictions that the preservation of nonconforming uses protects the right to continue only use of the same quality or character as existed before the date of the new zoning *236 regulation. 101 C.J.S. Zoning § 189; McQuillin, Sections 25.200 and 25.202. And, one of the tests to be used in determining whether there has been a change in quality or character is whether there has been a change from a higher to a lower classification under the zoning regulations in question. 101 C.J.S. Zoning § 190; McQuillin, Section 25.204.
Of course, each case must be decided under its own facts. Under the circumstances of this particular case, we conclude the trial judge correctly found that the new use which the defendant is making of Lot 22 is of a different quality and character from the nonconforming use existing at the time the zoning regulations became effective. Prior to the zoning regulations, the property was being used for the storage of vehicles being repaired in an adjoining automobile repair shop, and also for the parking of vehicles used in connection with defendant's construction business. Defendant has now changed the character of this use. He has constructed a shelled parking lot for customers of his lounge. This new use is in a lower classification under the ordinance and is more objectionable because lounge customers tend to be loud and boisterous and they park their automobiles and leave late at night.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant-appellant.
AFFIRMED.