378 So.2d 144 (1979)
CITY OF BATON ROUGE
v.
Omer J. HEBERT, Roy A. Hebert, E. Hiram Hebert and Merl Wiggins.
No. 12867.
Court of Appeal of Louisiana, First Circuit.
November 12, 1979.
Rehearing Denied December 27, 1979.
Writ Refused February 22, 1980.
*145 Parish Atty. Walter G. Monsour, Jr., Asst. Parish Attys. Frank J. Gremillion and James J. Zito, Baton Rouge, of counsel, for plaintiff-appellee City of Baton Rouge.
George K. Anding, Jr., Baton Rouge, of counsel, for defendant-appellant Omer J. Hebert, Roy A. Hebert, E. Hiram Hebert, Merl Wiggins.
Maurice J. Wilson, Jr., Baton Rouge, of counsel, for plaintiffs-appellees and intervenors City of Baton Rouge, Alice M. Anders.
J. Arthur Smith, III, Baton Rouge, of counsel, for defendants-appellees and intervenors Omer J. Hebert, Roy A. Hebert, E. Hiram Hebert, & Merl Wiggins and Bertha Gwin Knox Sorrells.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
The city of Baton Rouge sued to enjoin an alleged violation of its zoning ordinance on Lots 9 and 10, Block 4, University View Homesites Subdivision. Named as defendants were Omer J. Hebert, Roy A. Hebert, E. Hiram Hebert, owners of the tract, and Merl Wiggins, operator of a petroleum well on the tract. Bertha Gwin Knox Sorrells intervened as a defendant to protect her mineral interest in the tract. Also intervening was Alice M. Anders, owner of an adjacent lot, who intervened as a plaintiff. The district court granted a preliminary injunction from which the defendants suspensively appeal.
The principal issue in this case is whether the construction of four large tanks on the tract constitutes an enlargement or extension of an existing non-conforming use. The issue of abandonment of the non-conforming use is not before us as the trial court found no abandonment and plaintiff-appellee did not appeal nor answer the appeal.
In approximately 1948 an oil well was drilled on the tract in question. When the comprehensive zoning ordinance for the city of Baton Rouge went into effect in 1958, the lots were zoned residential. However, the oil well was permitted as a non-conforming use.
Until November 1977, the only structure on the tract was an assembly of pipes and valves known as a Christmas tree. It was placed over the well to control and divert the flow of fluids produced by the well. Service lines carried the fluid to storage tanks on another lot approximately 700 feet away. Although there remained a known reserve of oil, the well was shut-in during 1973 but kept on active status with the Department of Conservation.
In 1977 Memaca Petroleum Corporation acquired a mineral lease over the tract in question and the surrounding area. Under the direction of Merl Wiggins the well was reworked in November 1977 and put back into production. The city's suit is directed against four large tanks, which were placed on the tract to hold oil and water. The tanks are used to collect and hold the fluid produced through the Christmas tree and from one other well. Two tanks, with 400 and 1000 barrel capacity respectively, hold the water that is separated from the oil. Two 300-barrel tanks are for oil storage though, according to Wiggins, there is never more than 200 barrels of oil in the tanks. A truck comes daily to empty the oil tanks.
Wiggins explained the new tanks were necessary. He could not use the existing tanks which had serviced the well because the city had cut the service lines during road construction. A second impediment to use of the old tanks was that Memaca's mineral lease did not cover use of the facility, and Wiggins had been unable to secure permission from the surface owner to use it. Wiggins testified the tanks had been inspected *146 and approved by the Department of Conservation.
Both Wiggins and William Blackwell, a petroleum engineer familiar with the well and the new tank facility, characterized the tanks as accessory or incidental to the production of petroleum from the well. Wiggins said the well would have to be shut in if the tanks were removed unless other tanks in the area became available. He stressed the tanks were used not for storage but to collect and hold the oil until a truckload had accumulated. Blackwell opined that the addition of the tanks did not enlarge or extend the petroleum operation on the tract since the tanks were necessary to production.
The applicable law is sections 2.301 and 2.306 of the Baton Rouge zoning ordinance:
2.301 Non-conforming uses are those lawful uses of premises that do not conform with the requirements of this Ordinance on the effective date of the Ordinance or that become non-conforming by reason of any amendment thereto.
2.306 Except for the five types of uses provided in 2.307 a non-conforming use cannot be enlarged, extended, reconstructed, or structurally altered unless changed to a permitted use.
None of the five excepted uses in section 2.306 are pertinent to this case.
We hold the tanks constitute an extension of the existing non-conforming use. When the zoning ordinance was enacted, the land use on the tract consisted of the oil well and the Christmas tree, which directed the flow of fluid to tanks on another lot. The addition of the tanks to the tract enlarged the land use to include the collection and holding of the fluids produced by the well. This is clearly an extension of the previous use. We recognize the tanks are a necessary adjunct to production from the tract's well. However, that does not alter the fact that the tanks constitute a use of a distinct character and quality from that of the well and Christmas tree. See City of Lake Charles v. Frank, 350 So.2d 233 (La. App. 3d Cir. 1977). We note too that the tanks, though essential for production from the well, do not have to be located on the well site. Although from the point of view of a petroleum engineer the tanks might be merely incidental and accessory to oil production, from the perspective of land use the tanks are a very significant extension of the previous use. 101A C.J.S. Zoning and Land Planning §§ 167, 170.
Defendants also argue the City cannot apply its zoning ordinance to regulate oil production and storage because it is a field preempted by the State. It is true many aspects of petroleum production are exclusively within the jurisdiction of the State. La.R.S. 30:1, 4. However, we do not believe the state's preemption in this field extends to abridging a municipality's control over land use within its corporate boundary, at least not under the circumstances of this case. But cf. City of New Orleans v. State, 364 So.2d 1020 (1978).
Defendants' "equity" arguments are also without merit. Defendants assert the city should be estopped from objecting to the erection of the new tanks since it was the city's action in severing the lines to the old tanks that made the new tanks necessary. Wiggins's testimony was clear on the point that even if the service lines were still intact, they could not be used since he had been unable to get the landowner's permission to use the existing tank facility.
For the foregoing reasons, we affirm the holding of the district court. Costs of this appeal are to be paid by appellants.
AFFIRMED.