436 So.2d 1210 (1983)
Mr. & Mrs. Robert Leland REDFEARN, Mr. & Mrs. W. Scott Gibson, and Harry T. Howard, III
v.
Clara Binet, wife of/and Jacques Jules CREPPEL, d/b/a "Columns Hotel".
No. CA 0142.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1983.
Rehearings Denied September 22, 1983.
*1211 Oliver S. Delery, New Orleans, for defendants-appellants.
Jarrell E. Godfrey, Jr., L. Havard Scott, III, New Orleans, for plaintiffs-appellees.
Before REDMANN, C.J., and GARRISON and CIACCIO, JJ.
CIACCIO, Judge.
Defendants, owners of the property located at 3811 St. Charles Avenue in New Orleans, Louisiana (known as "The Columns Hotel") have filed a suspensive appeal from a judgment of the district court which enjoined them from operating a bar and/or *1212 lounge at that location and from serving any alcoholic beverages upon the premises, except to guests at private parties held at that location. Plaintiffs, residents of the area, answer the appeal asking that the defendants also be enjoined from operating a hotel and restaurant, and that they be precluded from serving any alcoholic beverages. We reverse in part, amend the judgment of the district court and affirm.
The issues which are presented by this appeal are: (1) Has the plaintiffs' action prescribed? (2) Do the plaintiffs have standing to sue for injunctive relief? (3) Did the trial court err in enjoining the operation of the bar? (4) Did the trial court err in refusing to enjoin the sale and/or service of all alcoholic beverages? (5) Did the trial court err in refusing to enjoin the operation of the restaurant and the "hotel"?
The facts presented are as follows:
The property which is the subject of this dispute is located at 3811 St. Charles Avenue in New Orleans, La., in an area which is zoned RM-3. It has been operated for many years under the name "The Columns Hotel", renting rooms to transient guests and renting one apartment on a long term lease. The property had undergone construction repairs on several occasions since 1976. Prior to the purchase by the defendants, the building was closed for business from March, 1977 through April, 1978 due to repairs. On June 14, 1978, the City of New Orleans issued a permit "to use and occupy the building as a hotel and rest[aurant]"
The defendants, Mr. and Mrs. Jacques Creppel, purchased the property in June of 1980. On August 15, 1980 the Department of Safety and Permits for the City of New Orleans wrote to the defendants advising them that no expansion of the restaurant would be allowed. On August 18, 1980 the City inspected the property and the inspection report noted that the restaurant consisted of two rooms and twenty tables with coffee being served, but no evidence of cooking. At the time the kitchen showed only a small sink. The report further stated that there were 28 bedrooms; 12 of the bedrooms had private baths and the remaining 16 rooms shared 2 baths.
In late August, 1980, Mr. Creppel filed an affidavit with the City which accompanied his liquor license application. The affidavit indicated that "a restaurant with a bar is indispensible to the operation of The Columns Hotel for the benefit and enjoyment of the hotel guest." The City issued the liquor license and renewed it on November 20, 1980.
The record and exhibits indicate that considerable time and expense was incurred by the owners in renovating The Columns into its current condition. Mr. Creppel testified that he converted one bedroom into a bar and two former bedrooms were transformed into a room for parties, by the removal of a partition wall. Mr. Creppel stated that in 1981 there were several parties hosted at The Columns in which there were one hundred guests in attendance. He indicated that there was one party which involved two hundred guests and which necessitated the use of the front porch of the building.
The neighbors were concerned over congested parking, increased traffic and garbage resulting from the operation of the restaurant and bar at The Columns and filed suit on August 21, 1981 seeking to enjoin these business operations.
After a trial on the merits, the district court enjoined the defendants from operating the bar and from serving alcoholic beverages except to guests at private parties, holding that the operation of the lounge was a prohibited addition or expansion of an existing non-conforming use. The district court refused to enjoin the restaurant operation, finding, among other reasons, that it was an existing non-conforming use.
PRESCRIPTION
The defendant-appellants have filed with this Court an exception of prescription wherein they allege that the plaintiff-appellee's suit was not filed timely. They reason that under Louisiana Revised Statute Title 33 Section 4727 and Comprehensive Zoning Ordinances of the City of New Orleans of *1213 1970, that the plaintiffs had forty-five (45) days from the issuance of the certificate by the Department of Safety and Permits to appeal to the Board of Zoning Adjustments.
We find that the appellants' exception of prescription is without merit and therefore the exception is overruled.
In the case of Brennan v. Board of Zoning Adjustments of the City of New Orleans, this Court rejected an identical argument. 371 So.2d 324 (La.App., 4th Cir., 1979). In that case we stated the following.
Appellants first contend that intervenors, were they to challenge the validity of the permit, had only 45 days from the time of its issuance to appeal. They cite Abaunza v. Roussou, 339 So.2d 524 (La.App. 4th Cir., 1976), to support this proposition. While it is true there is a 45-day limitation for appeals from any decision of the Director of Safety and Permits, this does not supersede the provision of R.S. 9:5625 permitting actions to enjoin the violation of zoning regulations within a two year period. Brennan v. Board of Zoning Adjustments for the City of New Orleans, supra at 325.
Since the plaintiffs brought this suit for injunction within two (2) years from the first act constituting the commission of the violation of the zoning restriction, the suit had not prescribed prior to its filing.
STANDING TO SUE
The appellants contend that the plaintiffs-appellees did not give sufficient proof of their "injury, loss or damage" in order to support the injunctive relief they sought and obtained.
Neighboring residents may enjoin a landowner from violating city zoning ordinances. Wright v. DeFatta, 244 La. 251, 152 So.2d 10 (La., 1963); Adams v. Brian, 212 So.2d 128 (La.App., 3rd Cir., 1968), writs ref. 252 La. 880, 214 So.2d 549. The right to seek injunctive relief is contingent upon a showing of some irreparable harm. Adams v. Brian, supra. In order to determine if a neighbor has been or will be damaged by the violation of the zoning ordinance, an examination of the evidence is required. Wright v. DeFatta, supra.
The courts have recognized an individual's right to seek injunctive relief where he has made a showing that he would be materially and adversely affected in the enjoyment of his home as a result of his neighbor's violation of the zoning ordinances. Wright v. DeFatta, supra.
In the instant case, we find that the plaintiffs have proved by a preponderance of the evidence that the operation of The Columns' bar and restaurant has materially and adversely affected them in the enjoyment of their homes.
Carol Jean Gibson is the owner of the property located at 1615 Peniston Street, which is within 100 feet of The Columns Hotel. She testified that as a result of the operation of the bar and restaurant at The Columns there has been more congested parking in the area, incidents in which her driveway is blocked by parked vehicles, an increase of trash which appears on her lawn between 10 p.m. and 7:30 a.m., and she sees "drunks" coming from the direction of The Columns.
Lynn Redfearn, a resident of 3717 Carondelet Street, which is one block from The Columns, attested to the dangerous and congested traffic and parking conditions which have occurred since the opening of the bar at the Columns Hotel.
The incidents of increased traffic and litter resulting from the operation of The Columns bar and restaurant was corroborated by the testimony of John Geiser, an officer of the St. Charles Avenue Committee.
We are satisfied that the plaintiffs have made a sufficient showing of harm to entitle them to seek injunctive relief in this case.
ZONING VIOLATION
The appellants argue that the defendants should be allowed to continue the operation of The Columns, with its bar and restaurant, because the property was stipulated to be a "hotel" by the parties to the litigation and was so recognized by the City's Department *1214 of Safety and Permits. Therefore, appellants reason that the property is classified as a non-conforming use hotel and thus, the restaurant and bar, which were licensed by the City, are acceptable accessory uses under this classification. The appellants further argue that they were within their rights in converting the sleeping room(s) into a bar as the local zoning ordinances allow the conversion of one non-conforming use to another. We do not agree.
Appellants argue that the property was stipulated to be a "hotel" and was recognized by the City of New Orleans Department of Safety and Permits as being so classified. However, neither the stipulation of the parties nor the ministerial pronouncements of a municipal board or department can usurp the clearly defined duty of the judiciary to interpret the law. La. Const. Art. 2 §§ 1-2, Art. 5 § 1. See: City of New Orleans v. Langenstein, 111 So.2d 363, 369 (La.App., Orleans, 1959).
The Columns does not meet the definition of a "hotel" as that term is utilized in the local zoning ordinances.
Article 14 Section 64 of the Comprehensive Zoning Ordinances for the Parish of Orleans defines a "hotel" as follows:
Hotel. A building containing 20 or more individual sleeping rooms or suites, having each a private bathroom attached thereto, for the purpose of providing overnight lodging facilities to the general public for compensation with or without meals, excluding accommodations for employees, and in which ingress and egress to and from all rooms is made through an inside lobby or office supervised by a person in charge at all hours. Where a hotel is permitted as a principal use, all uses customarily and historically accessory thereto for the comfort, accommodation and entertainment of the patrons, including the service of alcoholic beverages, shall be permitted.
Paul May was employed as a zoning commentator, with the Department of Safety and Permits for the City of New Orleans and was qualified as an expert in this field. Mr. May testified, in response to a hypothetical question, that if The Columns had twenty-two (22) rooms that could be used as sleeping rooms and approximately eight (8) separate baths for all twenty-two (22) rooms,[1] that the building did not qualify as a "hotel" for purposes of the City's zoning ordinance. We agree with this conclusion. Under this rationale, The Columns cannot enjoy the accessory accommodations of a hotel, that is, the operation of a bar and restaurant and the service of alcoholic beverages.
Moreover, Paul May testified that The Columns is located in an RM-3, Multiple Family Residential District. A "hotel" is not a permitted use within the confines of that zoning classification; M.S.C. Article 5, Section 5.2, Comprehensive Zoning Ordinance of the City of New Orleans (1970) provides:
Section 5. Uses Not Permitted Are Prohibited.
For the purpose of this Ordinance, permitted uses are listed for the various districts. Unless the contrary is clear from the context of the lists or other regulations of this Ordinance, uses not specifically listed are prohibited.
Accordingly, it follows that the accessory uses must also be prohibited as they cannot exist in the absence of the necessary principal use.
Even assuming for the sake of argument, that The Columns is a non-conforming use hotel, the accessory use of the bar, party rooms and expanded restaurant facility would be prohibited as constituting a less restrictive use and as the expansion of a non-conforming use.
The contention that certain property has acquired a legal non-conforming status and thus, that its use cannot now be restricted, is an affirmative defense which *1215 the defendant must prove by a preponderance of the evidence. City of Lake Charles v. Frank, 350 So.2d 233 (La.App., 3rd Cir., 1977); City of New Orleans v. Cantelli, 136 So.2d 838 (La.App., 4th Cir., 1962). In order to meet this burden, the defendant must show that the property was used for non-conforming purposes at the time the ordinance was enacted, and that the neighborhood knew at the time that it was being used for that purpose. City of Lafayette v. Black, 336 So.2d 982 (La.App., 3rd Cir., 1976), writ den. 339 So.2d 850 (La., 1976). A non-conforming use will be recognized if the property has been operated in a non-conforming status for a period of two years. R.S. 9:5625(B). The purpose of allowing a non-conforming use is to avoid the imposition of hardship on the owner of property already devoted to a use which is proscribed under the new zoning ordinance. City of Lake Charles v. Frank supra. The provisions for continuation of a non-conforming use should be strictly construed to secure their gradual elimination. City of Lake Charles v. Frank, supra. If the property becomes and remains vacant for a period of six (6) continuous months, it shall lose its non-conforming status. M.S.C. Article 12, Section 2, Comprehensive Zoning Ordinance of the City of New Orleans (1970).
Appellees argue that this property lost its non-conforming use status because no business was operated at this location from March, 1977 through April, 1978. The trial court found that The Columns was being operated in a non-conforming use status and therefore, apparently found that the appellees failed to prove that this classification had been lost. We have reviewed the record in this regard and we are satisfied that the trial court was not clearly wrong in its finding.
We agree that the failure to operate a non-conforming business for a continuous period in excess of six (6) months results in the loss of the non-conforming status. However, we note from the record that the operation of renting rooms to transient guests was again instituted in June, 1978 and continued publically and without interruption for at least two (2) years before suit was filed. Therefore, under the provisions of R.S. 9:5625(B), the property again enjoyed its prior non-conforming status.
The preservation of a non-conforming use protects only the right to continue the use of the same quality or character as existed before the date of the Comprehensive Zoning Ordinances and does not give the right for a change in use to a use of a lower grade or classification nor for a greater degree of non-conformity. City of Baton Rouge v. Hebert, 378 So.2d 144 (La. App., 1st Cir.1979) writ ref. 380 So.2d 210; City of Lake Charles v. Frank, supra; Spinato v. Lowe, 113 So.2d 73 (La.App., Orleans, 1959), writ granted, other grounds, 239 La. 604, 119 So.2d 480; City of New Orleans v. Langenstein, supra. The non-conforming use shall not be expanded into any other section of the building and no structural alterations, except those required by law or ordinance, shall be made in the non-conforming building or to the non-conforming part of the building. City of New Orleans v. Langenstein, supra.
The conversion of a sleeping room of The Columns into a bar would constitute a less restrictive use and is impermissible. M.S.C. Article 12 Section 4 Comprehensive Zoning Ordinance for the City of New Orleans (1970). Further, this is a prohibited expansion of the existing non-conforming use. Since we find that The Columns is not a "hotel" the operation of the bar is not a permissible accessory use, and the sale of alcoholic beverages in such a bar is prohibited.
Likewise, the conversion of the two sleeping rooms into public rooms for the purpose of holding private parties and receptions is a prohibited expansion of a non-conforming use, a change of a non-conforming use to a less restrictive classification and is violative of the local zoning ordinance. M.S.C. Article 12, Section 4, Comprehensive Zoning Ordinance For the City of New Orleans (1970).
Appellees argue that the opening of the restaurant at The Columns Hotel was an expansion or change of a non-conforming *1216 use to a less restrictive classification in violation of the local zoning ordinances. In the instant case, the district court found: "There was a restaurant there before, there is a restaurant there now..." In this regard the plaintiffs were unsuccessful in proving that the non-conforming status, acquired by the restaurant through its operation for at least two years, was lost by a vacancy for six (6) continuous months. Our review of the record does not convince us that the trial court was clearly wrong in concluding that the restaurant had acquired a non-conforming status.
In June, 1978 the City issued a use and occupancy permit for the operation of a hotel and restaurant at 3811 St. Charles Avenue in New Orleans, Louisiana. The owner of the property, Mr. Creppel, testified that in June 1970 the property was equipped for a restaurant and he had been advised by the prior owners that a restaurant was being operated there. He further testified that a few dinners had been served at that location since his acquisition of the property in June 1980. A City inspection report of August 18, 1980 indicated: "There are two rooms that contain about twenty (20) tables, that is presently being used to serve coffee only. No evidence of cooking going on. The kitchen shows that only a sink has been installed."
Despite the disparity in the description of the operation of the restaurant at The Columns, the court accepted the defendants' testimony that a restaurant had been operated at the location for sufficient period of time to confer a non-conforming status upon that facility. We cannot say that this finding is clearly wrong.
However, there are indications in the record that the restaurant facilities of the Columns have been expanded since the acquisition of the property by the current owners, Mr. and Mrs. Creppel. On August 15, 1980, the owners were placed on notice by the New Orleans Department of Safety and Permits that no expansion of the restaurant would be allowed. Any expansion of a non-conforming use and a change of a non-conforming use to a less restrictive classification and is violative of the local zoning ordinances. M.S.C. Article 12 Section 4, Comprehensive Zoning Ordinance For the City of New Orleans (1970). Therefore, insofar as the restaurant facility at The Columns was expanded after August 21, 1979, less than two years prior to the filing of this suit, it will be enjoined.
The serving of alcoholic beverages in the restaurant area, as herein defined and limited, is not prohibited, per se, because of the restaurant's non-conforming status. The Zoning Ordinance permits the sale of alcoholic beverages in restaurants located in certain apartment complexes in the RM-3 district, limiting the sale to residents and their guests. Article 5.3.7 and .8. We find that the sale of alcoholic beverages to patrons of a restaurant, and the use of part of the restaurant area for the operation of an accessory bar would not be prohibited. However, we offer no opinion regarding the right of appellants to obtain liquor permits for use in conjunction with their legally non-conforming restaurant, as that issue is not before us on appeal.
We are of the opinion, however, that the zoning ordinance does not prohibit defendants from maintaining their limited nonconforming restaurant use in different rooms from those used prior to August 21, 1979, as long as their total square footage is not greater. The neighbors have the right not to have the use expanded, but we do not consider the use of one room rather than another of equivalent size an expansion, when the entire building is nonconforming. Defendants may therefore be allowed to select which portion of their space is to remain in restaurant (including bar) use, as long as the total area is not increased over that used prior to August 21, 1979.
Accordingly, for the reasons assigned, the judgment of the district court enjoining Clara Binet, wife of/and Jacques Jules Creppel, their agents, employees and all persons acting or claiming to act on their behalf from carrying on the operation of a bar and/or lounge at 3811 St. Charles Avenue, New Orleans, Louisiana is amended and affirmed, in part, and, insofar as that *1217 judgment reserved the rights of the defendant(s) to serve alcoholic beverages to guests at private parties held at said location, it is reversed; further, the judgment is amended, to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that Clara Binet, wife of/and Jacques Jules Creppel, their agents, employees and all persons or parties acting or claiming to act on their behalf are enjoined from operating a bar or lounge except as part of the limited restaurant use.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants are enjoined from conducting parties, meetings or receptions in those former sleeping rooms which were converted to those uses.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants are enjoined from operating a restaurant at 3811 St. Charles Avenue, except in rooms whose total area does not exceed the square footage of the area used for restaurant purposes prior to August 21, 1979.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Clara Binet, wife of/and Jacques Jules Creppel, their agents, employees and all persons or parties acting or claiming to act on their behalf, are enjoined from selling and/or serving any and all alcoholic beverages upon the premises 3811 St. Charles Avenue, New Orleans, Louisiana except for the sale and/or service of alcoholic beverages in conjunction with the operation of the legally non-conforming restaurant facility provided they have obtained all necessary City and State alcoholic beverage permits.
Each party shall bear their own cost of this appeal.
REVERSED IN PART, AMENDED AND AFFIRMED.
REDMANN, C.J., concurs.
REDMANN, C.J., concurring.
One may agree that The Columns Hotel does not meet the New Orleans zoning ordinance's definition of a hotel (because some of its rooms do not have private baths), but it also does not meet the ordinance's definition of a multiple-family dwelling, or that of a rooming house, oras far as this writer can findanything else.
That being the case, it appears to have been a reasonable and enforceable stipulation that its nonconforming use is that of a hotel within the meaning of the zoning ordinance. In ordinary language, that surely seems to be its use.
If it is a "hotel," then its use category is that of zone MS (separated from the actual zoning of RM-3 only by RM-4), for that is the most restricted zone in which hotels (100 rooms or less) are permitted, art. 5 § 7.2.11. Yet that zone also permits restaurants, § 7.2.8, so restaurant use is not a less restricted use than hotel use. Art. 12 § 4 allows a change "to another nonconforming use of the same or a more restricted classification."
The Columns hotel could not be lawfully converted into a "cocktail lounge," of course, because that use is not permitted in zones more restrictive than B-1 Neighborhood Business District, art. 5 § 9.2.10. But for a restaurant to have a bar does not convert it into a prohibited "cocktail lounge," because a cocktail lounge is defined as "A place for service or consumption of alcoholic beverages but not including live entertainment," art. 14 § 2.26. The broadness of that definition, if taken literally, would make a cocktail lounge out of the bar in a person's own home, and therefore the definition must be understood to mean a building or separated part of a building ("place" is defined as "open, unoccupied space," art. 14 § 2.89) used principally for service etc. of alcohol. One's home is not a cocktail lounge, and neither is a restaurant, notwithstanding the use of some portion of either as a bar. Thus The Columns may include a bar within its restaurant space.
But to expand the restaurant space, including any part used as a bar, defendants must meet the parking requirements of the zoning ordinance. Art. 7 § 2.11 specifies that in the case of mixed use in the same *1218 building, each use's parking requirement is treated separately. § 2.12 provides that whenever "a building or use is changed or enlarged in floor area ... to create a need for an increase in parking spaces of 10 per cent or more ... such additional spaces shall be provided" (within 300 feet of the building, § 4.1). (Because RM-3 is a "high density district," art. 7 § 2.6a, within the zoning ordinance's parking regulations, a restaurant use is obliged to provide one space for each 250 square feet of floor area by art. 7 § 1, rather than for each 150 square feet as required in low and medium density districts.) Thus defendants may not expand their restaurant use (including its bar) to an extent that would require any additional parking space, unless that additional space is provided.
The record establishes that defendants cannot provide parking space on their own premises, and strongly suggests that they cannot do so within 300 feet of their building. Accordingly, while this writer would prefer to enjoin any expansion that would require any additional parking space only conditionally, i.e., unless parking requirements are met, the academic nature of such a condition does not justify delaying this appeal by forcing it to rehearing before a five-judge panel, La. Const. art. 5 § 8(B). The writer therefore concurs in the unconditional enjoining of such expansion.
Finally, defendants may not use their premises as a party hall for hire for up to 200 persons. Such a use appears to be either that of "meeting place," first permissible in CBD-1 Central Business District, or of "amusement place," first permissible in C-1 General Commercial, each of which is more restrictive than the minimal hotel category of MS and the actual zoning of RM-3.

ON APPLICATION FOR REHEARING
PER CURIAM.
On application for rehearing, plaintiffs-appellees note that the opinion of this Court enjoined the defendants from operating a restaurant at 3811 St. Charles Avenue "except in rooms whose total area does not exceed the square footage of the area used for restaurant purposes prior to August 21, 1979", and they suggest that the testimony in this proceeding did not establish with particularity the square footage of the restaurant at the "Columns Hotel" prior to August 21, 1979.
Although the record describes the area in which the restaurant was located, it is silent as to the actual dimensions of the kitchen and eating area that comprised the restaurant.
Accordingly, for this reason, we amend our earlier judgment to remand this case to the district court for the sole purpose of taking testimony to establish the square footage of the restaurant located in the "Columns Hotel" prior to August 21, 1979.
APPLICATION FOR REHEARING IS DENIED.
REDMANN, Chief Judge, dissenting from refusal of rehearing.
I would grant rehearing to defendants. My original concurrence probably errs in its view that additional parking space would be required if the restaurant and bar floor space were expanded.
NOTES
[1] Jacques Creppel testified that the property had twenty-one (21) sleeping rooms and fourteen (14) baths. Even assuming that this is correct, the building does not meet the definition of a "hotel" as that term has been defined.