|, PLOTKIN, Judge.
This application for supervisory writs arises from a trial court judgment making a writ of mandamus peremptory and ordering the defendants, the New Orleans City tax collectors, to collect a one percent sales and use tax on hotel rooms (and other items) pursuant to a July 22, 1999 resolution adopted by the Regional Transit Authority (“RTA”). The relators in these consolidated writs, intervenors in the court below, challenge the trial court judgment on two points: (1) the propriety of judgment making the writ of mandamus peremptory, and (2) the dismissal of the inter-venors/relators from the case.
Facts
The RTA was authorized by the Regional Transit Authority Act of 1979, LSA-R.S. 48:1651 et seg. The Act designated the RTA as a “body politic and corporate and a political subdivision” of the state of Louisiana. LSA-R.S. 48:1654(A). Among the authority granted the Board of Commissioners of the RTA (“RTA Board”) by the legislative act was the power to impose taxes, provided certain conditions were met. LSA-R.S. 48:1664. The first limitation on the power to impose taxes within the geographical area covered by the RTA is found in prohibitions stated in the Act or imposed by the Constitution or laws of Lthe state of Louisiana. Id. The second limitation imposed by LSA-R.S. 48:1664 is found in the following sentence:
Notwithstanding any other provision of .law to the contrary, the authority may exercise its powers of taxation within any local governmental subdivision located wholly within the regional area provided only that the proposed tax must be approved by a majority of voters voting thereon within the affected local governmental subdivision.
Id. (Emphasis added.)
On November 21, 1984, the RTA Board adopted a “Resolution Calling an Election on January 19, 1985 to Authorize the Regional Transit Authority to Levy and Collect a One Percent Sales and Use Tax.” In that resolution, the RTA Board noted that the one-percent sales and use tax which was then in effect in Orleans Parish would expire by its own terms on May 31, 1985. The proposition also noted that the RTA Board may not impose a tax “unless it has first been approved by a majority of voters” voting in an election. Thus, the RTA Board called and ordered a special election “for the purpose of submitting to all registered voters, qualified and entitled to vote at said election under the Constitution of the United States” a specific proposition. The proposition specifically exempted “the occupancy of hotel rooms as defined in Section 47(M) of Article XIV, Section 16 of the Louisiana Constitution of 1974.” The proposition also exempted “drugs, orthotic and prosthetic devices and patient aids prescribed by physicians for personal consumption or use, and food sold for preparation or consumption in the home, all as presently defined in R.S. 47:305(4).”
After the voters approved the tax, on May 29, 1985, the RTA Board adopted Motion No. M-85-53 levying the tax which had been approved by the voters ^pursuant to the above proposition. Section 6 of that Motion deals with “Exempt Transactions Generally.” That section provides, in pertinent part, as follows:
GG. The occupancy of hotel rooms, as defined in Section 47(M) of Article XIV of the La. Const. Of 1921 and made statutory by the provisions of Article XIV, Section 16 of the La. Const, of 1974.
Drugs, orthotic and prosthetic devices, patient aids, and food were also subject to exemptions. Although the relators in the instant ease are concerned primarily with *963 the exemption on hotel rooms, the other exemptions were also impacted by RTA’s subsequent resolution, described below.
The events leading to the instant case were set into motion on July 21, 1999, when the RTA Board adopted Resolution No. 99-033, which sought to amend, correct, and/or supplement Motion M-85-53, described above, in order to repeal what the RTA Board refers to as “invalid, unconstitutional and ultra, vires exemptions” from the one percent sales and use tax. The resolution stated specifically that the RTA Board had “determined a need to enhance and increase its tax revenues by seeing to it that its current taxes are not increased but are applied fairly, properly, and full accord with the Constitution.” The RTA Board claims that its attorneys have discovered that the sections of the Constitution previously cited as prohibiting the tax on hotel rooms do not in fact prohibit such a tax after the adoption of the 1974 Constitution. The resolution stated that the enhanced tax revenues would be used to complete the light rail transit and commuter rail system in the City of New Orleans.
The new RTA Resolution was sent to Marina Kahn, New Orleans Director of Finance, who responded with a letter in which she stated that she had decided to “amicably and respectfully decline to comply with the RTA Resolution, until such |4time as it becomes clearly established that the enclosed Resolution providing amendment and correction to Motion 85-53 are proper and that I am legally obliged to comply with its provisions.” The RTA Board filed a Petition for Mandamus and Declaratory Judgment to compel the City tax collectors to collect the sales tax. The trial court issued a writ of mandamus on the same day.
On July 30, 1999, interventions were filed by the Greater New Orleans Hotel and Motel Association, the Louisiana Restaurant Association, the Metropolitan Convention and Visitors Bureau, Inc., and various hotels, challenging the RTA Board’s attempt to have the court improperly rule on declaratory judgment issues in a summary proceeding. The RTA Board moved to sever the declaratory judgment issues from the mandamus issues. Without opposition, the trial court, on August 2, 1999, granted the motion to sever.
On the same day, the trial court issued a judgment making the alternative writ of mandamus peremptory; ordering the City Director of Finance and Collector of Revenue to enforce the provisions of RTA Motion 85-53 “as amended, corrected, and/or supplemented by the RTA Board Resolution 99-033”; partially recalling the alternative writ of mandamus with respect to paragraph 1(B) of RTA Resolution 99-033; denying the RTA Board’s exception to the interventions filed by the hotels, but granting the exception to the interventions of the Greater New Orleans Hotel and Motel Association, the Louisiana Restaurant Association, and the New Orleans Metropolitan Convention and Visitors Bureau, Inc., dismissing the interventions; and denying all other exceptions.
All of the intervenors filed motions and applications for supervisory writs in this Court. Because of the importance and complexity of the issues presented by the controversy, as well as the need for prompt appellate review of the issues, this | BCourt stayed the trial court judgment and suspended the collection of the tax, pursuant to its authority established by La. C.C.P. art. 2164 to “render any judgment which is just, legal and proper.” The Court also heard oral arguments from the various parties on Friday, August 20, pursuant to the same authority. After considering all arguments and equities, we grant writs, recall and annul the writ of mandamus, reaffirm the order suspending the collection of the tax pending a decision on the declaratory judgment issues, order the trial court to hear and decide the declaratory judgment issues on an expedited basis, reverse the trial court judgment dismissing the interventions, and remand the case.
*964 Mandamus
The first issue presented by the interve-nors relates to the propriety of the trial court judgment making the writ of mandamus peremptory. The intervenors claim that mandamus is not available, as a matter of law, to compel enforcement of RTA Resolution 99-033. The intervenors make five arguments on this issue:
1. RTA Resolution 99-033 cannot be considered “presumptively valid,” as found by the trial court.
2. Mandamus may not be used to compel the performance of a contractual obligation.
3. Execution of the court’s judgment would require the defendants to violate a statute.
4. The actions requested of the defendants are not purely ministerial duties.
5. Mandamus is not available to plaintiff as the law provides for possible relief by ordinary means.
In Acadian Ambulance Service, Inc. v. Parish of East Baton Rouge, 97-2119 (La.App. 1 Cir. 11/6/98), 722 So.2d 317, writ denied, 98-2995 (La.12/9/98), 729 So.2d 583, the court described the requirements for issuing a writ of mandamus as follows:
Mandamus is a summary proceeding, which is defined as a writ that may, among other things, be used to direct a public officer to perform ministerial duties required by law. LSA-C.C.P. arts. 3781, 3861, and 3863; see Reed v. Louisiana Board of Pharmacy, 96-1792 (La.App. 1st Cir.9/19/97), 700 So.2d 926, 928. It is an extraordinary remedy, which must be used by the court sparingly — only to compel action that is clearly provided by law, where it is the only available remedy or where delay occasioned by the use of any other remedy would cause injustice. LSA-C.C.P. art. 3862; Allen v. St. Tammany Parish Police Jury, 96-0938 (La.App. 1st Cir.2/14/97), 690 So.2d 150, 153, writ denied, 97-0599 (La.4/18/97), 692 So.2d 455. Mandamus lies only when a public official refuses to perform a duty the law clearly states he must perform. Bye v. Board of Trustees of Police Pension Fund, 274 So.2d 855, 856 (La.App. 4th Cir.1973). It never issues in doubtful cases. State ex rel. Neighborhood Action Committee v. Edwards, 94-0630 (La.App. 1st Cir.3/3/95), 652 So.2d 698, 700.
Id. at 322. See also, Riley v. Riley, 94-2226 (La.App. 4 Cir. 9/4/96), 680 So.2d, 169 172.
Thus, a writ of mandamus is appropriate only if the court finds the following elements: (1) public officer has refused to perform a ministerial duty, which is clearly provided by law, and (2) mandamus is the only available remedy or the delay caused by use of any other remedy would cause injustice. Both requirements must be met in order for a court to properly make a writ of mandamus peremptory. Because we find, under the circumstances of this case, that the duty of the City taxing officers to collect the tax is not “clearly provided by law,” the trial court judgment making the writ of mandamus peremptory was inappropriate. Thus, the writ of mandamus is recalled and annulled.
In issuing reasons for her judgment making the writ of mandamus peremptory, the trial court made the following findings: (1) “that the RTA’s taxing resolutions are presumed valid unless and until they are declared to be ^unconstitutional or otherwise invalid and unenforceable”; (2) “that the defendants are the public officials legally charged with a duty to collect the RTA sales and use tax and that duty is a ministerial duty”; (3) “that the tax collectors have no discretion to decide whether or not to enforce and collect a presumptively valid tax in accordance with the terms set forth in the tax levy adopted by a taxing authority”; (4) “the duty of the City tax collectors is to collect the tax levied by the RTA, not to interpret the law which imposes that duty”; (5) “that the City tax collectors can comply with their *965 ministerial duty to collect the RTA sales and use tax 'without having to decide the issue reserved for the declaratory judgment part of this case, e.g., the validity of Section 1(B) of the tax resolution,” and (6) “that any restraint in the RTA’s sales and use tax due to the delays involved in obtaining ordinary relief pending disposition of the declaratory issues of this case would constitute an irreparable injustice to the plaintiff and constitute a violation of La. Const. Art. VII, Sec. 3, which prohibits the restraint of any tax levied by a taxing authority.”
However, as stated above, our review of the record convinces us that, the duty of the City taxing officers to collect the RTA tax is not “clearly provided by law,” as required for making a writ of mandamus peremptory. LSA-R.S. 48:1664 limits the authority of the RTA Board to impose taxes by requiring that all taxes be “approved by the majority of voters voting within the affected local governmental subdivision.” Moreover, the proposition approved by Orleans Parish voters in 1985 clearly exempts hotel room occupancy from the tax as well as other items. In fact, the RTA Board admitted in oral argument in this court that the proposition passed by the voters was the same as the tax being collected by the City for transit purposes prior to the establishment of the RTA. The RTA Board claims that the 18people did not care whether tourists were subject to the same tax they pay; however, the public voted on and approved a proposition that included the exemptions. One obvious reason for including such exemptions in the plebiscite would be to provide an economic incentive for tourism and for the purchase of food, drugs, and medical supplies in order to encourage the industries in the region. This consideration could conceivably motivated the voters to approve the tax proposition. The real question to be decided is whether the RTA Board’s sua sponte action of passing a resolution adopting a different interpretation of the pertinent constitutional provisions is sufficient to simply repeal the exemption, despite the fact the voters voted for a proposition that specifically included the exemptions for hotels and other items.
The RTA Board claims that the fact that the exemption was clearly included in the proposition approved by the voter does not mean that it must go back to the voters to remove the exemption. In support of this argument, the RTA Board cites one case and several Attorney General opinions holding that the repeal of a tax exemption is not an increase of an existing tax or the adoption of a new tax. However,, the case cited by the RTA Board involved a house concurrent resolution suspending (not exempting) an exemption from a sale tax for school boards. Orleans Parish School Board v. McNamara, 532 So.2d 512 (La.App. 1 Cir.), writ denied, 535 So.2d 744 (La.1989). Nothing in the opinion indicates that any Constitutional provision (or former Constitutional provision) was impacted by the tax, or that any statutory provision required voter approval of the tax, which was initially imposed by one legislative act and was suspended by another, later legislative act. The McNamara case turned on the intent of the legislature, which [9had both initiated the exemptions and suspended them, as evidence by the following quote:
Plaintiff, as appellee, argues that the suspension of a prior exemption amounts to a new tax, which by law cannot be enacted by a House Concurrent Resolution. Plaintiff fails to recognize that prior to the enactment of LSA-R.S. 47:305.29 in 1980, they were not exempt from the payment of the 3% State sales tax in effect at that time. Plaintiff further fails to recognize that LSA-R.S. 47.331, which enacted the final 1% sales tax thus increasing the tax from 3% to 4%, was a properly enacted tax statute. The Legislature by expression of clear intent, continued plaintiffs exemption from the assessment of the 1% tax until the Legislature convened in 1986 when it chose to suspend all exemptions in an attempt to increase revenue to the State.
*966 Id. at 514-515. Not only does the RTA Board mischaracterize the McNamara case as dealing with an exemption, when it really involved a suspension, the other factual differences between the two cases are obvious.
The three Attorney General opinions cited by the RTA Board, which refer to the repeal of a “tax exemption granted by statute,” are likewise distinguishable. All three opinions concern the interpretation of La. Const., Art. 3, § 2(A), which prohibits the Louisiana legislature from levying a new tax or increasing an existing tax during a regular session in an odd-numbered year. Attorney General Opinions No. 75-501, 77-597, 79-632. The attorney general opined in all three opinions that repealing a tax exemption is not prohibited by the Constitutional provision because it is neither the levy of a new tax or the increase of an existing tax. This Court is not bound by Attorney General opinions. Moreover, even assuming that the attorney general was correct, that fact does not answer the question presented by the instant controversy. We express no opinion on the propriety of the RTA Board’s repeal of the exemptions. We simply hold that mandamus is not appropriate until the factual and legal questions have been answered concerning the duty of the City taxing officers to collect the tax. Certainly, neither the | wMcNamara case nor the Attorney General opinions are not sufficient to support a conclusion that the City taxing officers have a duty “clearly provided by law” to collect the tax.
Another problem arises from the trial court’s finding that the RTA tax is “presumptively valid.” As noted by the inter-venors, the trial court failed to cite any authority for that finding and we have been unable to find any authority. In support of the trial court’s finding, the RTA Board cites Article VII, Section 3 of the Louisiana Constitution. RTA Board cites the following provisions of the article:
(A) The legislature shall prohibit the issuance of process to restrain the collection of any tax. It shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.
(B) (1) Notwithstanding any contrary provision of this Constitution, sales and use taxes levied by political subdivisions shall be collected by a single collector for each parish.
The RTA cites numerous cases that simply hold that the issuance of any process to restrain the collection of any tax is prohibited. However, those arguments beg the question. Unquestionably, Louisiana law prohibits the restraint of the collection of a valid tax. The question in this case is whether the tax is valid. That issue must be decided by a declaratory judgment entered by the trial court.
The RTA Board further begs the question presented by this writ application by claiming that the “proper method” for challenging a tax is to pay the tax under protest, then file suit for a refund. Although that procedure is obviously appropriate for attacking the tax, that fact does not necessarily exclude every other method of challenging a tax. Moreover, it does not impact the real issue in this case — i.e., whether the writ of mandamus should have been made peremptory, requiring the City taxing officers to collect a tax which is suspect for many |nreasons. Besides the reasons already mentioned, we note the fact that the face' of the RTA Board’s resolution raised legal questions about the validity of the tax. Moreover, in addition to hotel occupancy, the sale of food and many medical-related items previously exempted from the tax is also impacted by the RTA resolution seeking to repeal the tax exemptions. A mandamus may be issued only under those circumstances where the public officer’s duty is “clearly provided by law.” Such a duty is not involved in the instant case.
Whether the duty of the City taxing officers to collect the RTA tax is “clearly provided by law” may only be definitively determined by a decision on the declarato *967 ry judgment issues in this case. The trial court specifically recalled and vacated the writ of mandamus with respect to “enforcement of Paragraph 1(B)” of RTA Resolution 99-033. That paragraph questions the Constitutionality of the exemption. The RTA Board claims that the exemption is unconstitutional because it is not uniformly applied to all local government subdivisions, school boards, and other political subdivisions. However, the intervenors claim that the uniformity provision does not apply to the RTA tax because it is a local tax. Thus, the Constitutionality question must also be answered before, a court can properly find that the duty of the City taxing officers to collect the tax is “clearly provided by law.”
Accordingly; the writ of mandamus ordering the City taxing officers to collect the RTA tax is recalled and annulled. However, this court’s previous order suspending the collection of the tax is to remain in effect pending resolution of the declaratory judgment issues. The trial court is ordered to hear and decide the declaratory judgment issues expeditiously. The case is remanded to the trial court for further proceedings consistent with this decision.
1 ^Intervention
The trial court’s dismissal of the interventions of the New Orleans Hotel and Motel Association, the Louisiana Restaurant Association, and the New Orleans Metropolitan Convention and Visitors Bureau, Inc. is also challenged in the consolidated applications for supervisory writs. Determination of whether an association has standing to bring suit on behalf of its members depends on the following elements: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization’s purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members. Ramsey River Road Property Owners Association, Inc. v. Reeves, 396 So.2d 873, 874 (La.1981), citing Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 334, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).
In the instant case, the trial court dismissed the exception to the intervention of the hotels, apparently finding that the hotels have standing to sue in their own right. The hotels that have filed interventions, as well as area hotels that have not filed interventions, are members of the various associations seeking to intervene in this case. Louisiana law recognizes an association as a legal entity, able to sue and be sued. La. C.C.P. arts. 689, 738. Obviously, the members of the associations have standing to sue in their own right. Thus, the first element for determining the right of the associations to intervene has been established.
Moreover, the interests that the various associations seek to protect by intervening in this case are germane to the purpose of the organizations. All three organizations have New Orleans hotels and motels as members. The brief filed by | ^attorneys for the Greater New Orleans Hotel and Motel Association and the New Orleans Metropolitan Convention and Visitor’s Bureau, as well as the brief filed by attorneys for the Louisiana Restaurant Association, describe the purpose of those associations the same way: “fostering and promoting the mutual benefits of the members in the hospitality industry of New Orleans, and advancement of the region’s economic growth by positioning New Orleans as a premier visitor destination.” Certainly, challenging the collection of an allegedly invalid tax imposed on tourists and conventioneers is germane to that purpose. Finally, nothing about the claim asserted by the intervenors or the relief requested requires that all member hotels and motels participate in the lawsuit. Thus, the inter-venor associations have standing to challenge the tax. The trial court improperly dismissed the interventions. That part of the trial court judgment is reversed.
*968 Conclusion
For the above and foregoing reasons, this court grants writs, recalls and annuls the writ of mandamus, reaffirms the suspension of the collection of the tax pending resolution of the declaratory judgment issues, orders the trial court to conduct an expedited hearing on the declaratory judgment issues, reverses the trial court judgment dismissing the intervenors, and remands to the trial court.
WRIT GRANTED; WRIT OF MANDAMUS RECALLED AND ANNULLED; ORDER SUSPENDING COLLECTION OF TAX REAFFIRMED PENDING RESOLUTION OF DECLARATORY JUDGMENT ISSUES; TRIAL COURT ORDERED TO HEAR DECLARATORY JUDGMENT ISSUES EXPEDITIOUSLY; JUDGMENT DISMISSING INTERVENTIONS REVERSED; CASE REMANDED.
ARMSTRONG, J., DISSENTS WITH REASONS