396 So.2d 873 (1981)
RAMSEY RIVER ROAD PROPERTY OWNERS ASSOCIATION, INC.
v.
Charles E. REEVES et al.
No. 80-C-2261.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 17, 1981.
*874 Perrin C. Butler, New Orleans, James D. Johnson, for defendants-applicants.
J. Arthur Smith, III, Frederick W. Ellis, Baton Rouge, for plaintiff-respondent.
CALOGERO, Justice.
By this suit plaintiff, a non-profit property owners association, seeks to enjoin the construction of a bridge which defendants propose to build across the Bogue Falaya River at a point approximately four miles north of Covington, Louisiana. They allege that the river is navigable at that location.
Defendants filed peremptory exceptions of no right of action, no cause of action and failure to join indispensable parties. The trial court overruled the exceptions and, following trial on the merits, rendered judgment that the river was navigable at the site of the proposed bridge, and issued an injunction prohibiting defendants' construction "until such time as they have fully complied with the laws, rules, regulations and ordinances of the Federal Government, the State of Louisiana and the Parish of St. Tammany governing the construction of any structure over a nevigable (sic) waterway." Defendants appealed to the First Circuit Court of Appeal which affirmed the trial court. 387 So.2d 1194 (La.App. 1st. Cir. 1980). By application to this Court, defendants challenge the finding of navigability and continue to assert that plaintiff association does not have standing to bring this suit. We granted certiorari to consider these matters. 394 So.2d 605 (La.1980).
Our initial inquiry concerns the issue of standing. It is axiomatic that a plaintiff must have a "real and actual interest" in the action he asserts before the courts will entertain his suit. C.Civ.P. art. 681. Louisiana Revised Statute 12:201 et seq. provides for the formation of non-profit corporations. Among the powers of such corporations is the right to sue in the corporate name. R.S. 12:207 B(3). Thus, the fact that the plaintiff is a non-profit corporation does not bar the suit if the plaintiff corporation demonstrates that it possesses the requisite "real and actual interest" in the litigation it files.
Recently we decided Louisiana Hotel-Motel Association Inc., et al. v. Parish of East Baton Rouge, et al., 385 So.2d 1193 (La.1980), and held that those plaintiffs failed to show standing to prosecute the lawsuit. Our examination of standing was aided by the criteria set forth in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The criteria which must be met before an association can bring a suit on behalf of its members are: (1) the members would otherwise be able to bring the suit in their own right, (2) the interests the association seeks to protect are pertinent to its purpose and (3) neither the claim asserted by the association nor the relief sought requires the participation of individual members in the lawsuit. La. Hotel-Motel Association, Inc., supra, 385 So.2d at 1197.
The plaintiff association is composed of property owners in the vicinity of the proposed bridge. Some of these members own property adjacent to the Bogue Falaya River. Riparian property would be subject to whatever harmful effects might result from an obstruction in the river. Under these circumstances, individual members of the association could institute the suit in their individual capacities.
The Articles of Incorporation of Ramsey River Road Property Owners Association, Inc., set forth the purposes of the organization among which are: "... to perform or have performed studies of the environmental impact, of the costs and benefits, and of the legalities of proposed facilities; to institute, defend, or participate in appropriate legal, administrative, or other proceedings to serve the above purposes or to seek protection of the environment and compliance with all laws and regulations related to matters affecting it: ..." *875 The instant suit is consistent with the expressed purposes of the organization.
Finally, the participation of the individual members of the association is not necessary for a proper adjudication of the navigability and injunction issues. While individual members, singly or as multiple plaintiffs, could have pursued this litigation, there is no impediment to the suit in its present posture.
Relators rely upon the decision of the Fourth Circuit in Save Our Wetlands, Inc. v. Werner Brothers, Inc., 372 So.2d 231 (La. App. 4th Cir. 1979), in which that court found that the non-profit corporate plaintiff lacked standing to sue. The essential fear expressed in that case is unrelated to the realities here for in this case the members of the association are not hiding behind a corporate shield. The membership list of the association was given to relators in discovery and was filed into evidence during the trial. Ramsey River Road Property Owners Association, Inc., is not a group of anonymous people. Members of the group testified at trial that they use the area for recreational purposes and that their property abuts the river. Under the analysis of the Hotel-Motel Association case, plaintiff Association has demonstrated its real and actual interest in the subject matter of the litigation.
In an earlier case, Garden District Property Owners Association v. City of New Orleans, et al., 98 So.2d 922 (La.App. 4th. Cir. 1957), cert. den. 1958, the Fourth Circuit used an analysis similar to that of the Hotel-Motel Association case to find that an association of property owners had standing to sue to enjoin the city from issuing a certificate of occupancy for nonconforming use in violation of municipal zoning ordinances. In Garden District the court stressed that the purposes of the association stated that it was chartered to encourage and procure the enforcement of zoning ordinances.
Ramsey River Road Property Owners Association has standing to bring this lawsuit. Defendant's exceptions contesting that right are without merit. The exceptions were properly overruled.
Plaintiff predicated its suit on the premise that the Bogue Falaya River is navigable and that defendants may not construct a bridge over a navigable stream without first complying with procedures established by the state and federal governments because the bed and water of navigable waterways is owned by the state, while control of the water, for purposes of navigation, vests in the federal government.[1] Both sovereigns thus have interests in navigable waterways.
Louisiana's ownership of the beds and waters of the navigable waterways within the state is by virtue of the Equal Footing Doctrine.[2] Our inquiry regarding the navigability of the Bogue Falaya River must therefore focus upon the status of the river in 1812, the year Louisiana entered the Union, and the means of navigation available at that time, because navigability to fix ownership of the river bed is determined by the year of admission to statehood for states other than the original thirteen. United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1941).
Concerning navigability, the United States Supreme Court and this Court have said that rivers are navigable in law if they are navigable in fact and rivers are navigable in fact if they are capable of being used for commercial purposes. "... the true test of the navigability of a stream does not depend on the mode by which commerce is, or may be, conducted, nor the difficulties attending navigation. *876 If this were so, the public would be deprived of the use of many of the large rivers of the country over which rafts of lumber of great value are constantly taken to market.
"It would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway. The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use. If it be capable in its natural state of being used for purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact and becomes in law a public river or highway." The Montello, 87 U.S. 430, 441, 442, 20 Wall. 430 [22 L.Ed. 391] (1874).
"Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." The Daniel Ball, 77 U.S. 557, 563, 10 Wall. 557 [19 L.Ed. 999] (1870).
"The rule laid down by the Supreme Court of the United States is that streams and lakes which are navigable in fact are deemed navigable in law, and that they are navigable in fact when they are used or susceptible of being used in their natural and ordinary condition as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. The Daniel Ball v. United States, 10 Wall. (77 U.S. 557, 566, 19 L.Ed. 999; United States v. The Montello, 20 Wall. (87 U.S.) 430-445, 22 L.Ed. 391; United States v. Cress, 243 U.S. 316, 323, 37 S.Ct. 380 [383], 61 L.Ed. 746; Economy Light and Power Co. v. United States, 256 U.S. 113, 121, 41 S.Ct. 409 [412], 65 L.Ed. 847; Oklahoma v. Texas, 258 U.S. 574, 586, 42 S.Ct. 406 [411], 66 L.Ed. 771; Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140. The same rule with regard to navigable waters of the state, as contradistinguished from the navigable waters of the United States, has been observed in the decisions of this court. Goodwill v. Police Jury of Bossier Parish, 38 La.Ann. 752; Burns v. Crescent Gun & Rod Club, 116 La. 1038, 41 So. 249; Board of Commissioners of Caddo Levee District v. Glassel, 120 La. 400, 45 So. 370; Delta Duck Club v. Barrios, 135 La. 357, 65 So. 489; Smith v. Dixie Oil Co., 156 La. 691, 101 So. 24." State v. Sweet Lake Land & Oil Co., 164 La. 240, 113 So. 833 (1927).
Furthermore,
"Navigability, in the sense of the law, is not destroyed because the watercourse is interrupted by occasional natural obstructions or portages; nor need the navigation be open at all seasons of the year, or at all stages of the water." Economy Light and Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921).
Our inquiry into the navigability of the Bogue Falaya River is aided by a case decided by this Court many years ago. Ingram v. Police Jury of St. Tammany, 20 La.Ann. 226 (1868), also concerned efforts to halt construction of a bridge at approximately the same location as the one at issue in the instant case. Our opinion in Ingram quotes testimony introduced at the trial of that case:
Captain John Thompson, testified:
"`He is the captain of the steamer Aurora, running from the Sulphur Spring to New Orleans, carrying bricks: The Sulphur Spring is on the Bayou Falia river in the parish of St. Tammany. This Steamer runs above that point and place to the brick-yard of plaintiff. The Aurora carries 20,000 bricks; her tonnage is forty-five tons registered; where the brick-yard is, the channel is about twenty feet wide in low-water, and about thirty feet in high-water; the draft of this boat is four feet loaded; he has been running *877 this boat a month and has made regular trips from the brick-yard to the Basin in New Orleans; from his knowledge of this river, it is navigable between the two points mentioned for vessels and small size steamers that usually navigate Lake Ponchartrain; the bricks are manufactured for a company in New Orleans and Mr. Ingram is the foreman. Witness had already made in October, 1867, three trips, and was on his fourth; had carried between 17,000 and 18,000 bricks in low-water; there is ebb and flow in the river up to the brickyard; generally twice a day ebb and flow; the length of the Aurora is ninety feet, breadth fourteen feet three inches.'
"It appears from the testimony of other witnesses, that this Bayou Falia has often gone over the bridge, which was carried away; that at the place of the bridge, the waters of the Bayou Falia have risen from low-water-mark, to about twenty feet perpendicular in a freshet. This Bayou Falia empties into the Tchefuncta river, and the latter into Lake Ponchartrain.
* * * * * *
"Upon the whole, we are of opinion that this river Falia is navigable in the intendment of the law, ...." 20 La. Ann. at 227, 228.[3]
The site of defendant's proposed bridge is admittedly a short distance (about three miles) upstream from the location determined to be navigable in Ingram. However, there are indications in the record before us that, as is the case at the present time, in 1812 there was no substantial difference in the nature of the river at the respective locations. For instance, there was trial testimony that in the nineteenth century lumbering operations were carried on in the vicinity of defendant's proposed bridge and that the lumber was floated down the Bogue Falaya to Covington. Testimony to the same effect is found in Ingram, the record of which was introduced into evidence in the instant case.
We conclude that the district court and the Court of Appeal were correct in determining that the Bogue Falaya River at the point where defendants propose to build a bridge was navigable in fact at the time Louisiana was admitted to the Union and thus a public waterway then and today. The injunction was properly granted.

Decree
Accordingly, we affirm the judgment of the Court of Appeal.
AFFIRMED.
DIXON, C. J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent, for two reasons.
First, this is an injunction suit to stop the construction of a bridge without prior compliance with federal, state, etc. laws and regulations.
There seems to be nothing in the record about federal requirements except a finding by the Coast Guard that this body of water is not and was not navigable, and that it will require no steps to be taken before the construction of the bridge.
If there are no governmental requirements for the construction of a bridge over this stream, this injunction could be pure harassment.
Second, the stream does not seem to be navigable now, and was not navigable, according to the record, in 1812. The majority finds only one evidentiary basis for holding the Bogue Falaya navigablethat sawmill and logging operations were carried on above this bridge site sometime in the 19th century, and the "lumber" was floated downstream. The same source for that finding (Ingram v. Police Jury of the Parish of St. Tammany, 20 La.Ann. 226 (1868)), also discloses that logs or lumber could only be floated downstream at this point by opening floodgates in a dam constructed to *878 raise the water level enough for logs to float. I did not know that a two foot high man-made dam could make a shallow stream navigable in perpetuity.
NOTES
[1] Port of Seattle v. Oregon & Washington Railroad Co., 255 U.S. 65, 41 S.Ct. 237, 65 L.Ed. 500 (1921).
[2] New states are admitted to the Union on an equal footing with the original thirteen. Pollard et al. v. Hagan et al., 44 U.S. 212, 3 How. 212, 11 L.Ed. 565 (1845). When the Revolution occurred, each state became sovereign and acquired the ownership of navigable waters in the state and the soils under them. Martin v. Waddell's Lessee, 41 U.S. 367, 16 Peters 367, 10 L.Ed. 997 (1842).
[3] In federal jurisprudence, once a waterway is found to be navigable, it remains so. Economy Light & Power Co., supra.