651 So.2d 345 (1995)
Jerry GUILLOT, et al., Plaintiff-Appellees,
v.
George C. BROOKS, Jr. and Charles Kudolis, Defendants-Appellants.
No. 26544-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
Stay Denied; Writ Denied April 6, 1995.
*346 Charles R. Rowe, Bossier City, for appellant.
Henry Bernstein, Shreveport, for appellee.
Before SEXTON and HIGHTOWER, JJ., and PRICE, J. Pro Tem.
HIGHTOWER, Judge.
Defendants, George C. Brooks, Jr. and Charles C. Kudolis, appeal a judgment enjoining use of their ultralight landing strip in violation of a Bossier Parish ordinance requiring zoning board approval of any "airport" in a residential-agricultural district. We affirm.

Background
In July 1987, defendants initiated their eventual purchase of an eight-acre tract along Wemple Road in Bossier Parish, intending to use the residential-agricultural zoned property to establish Pioneer Field, an airfield for ultralights.[1] Upon obtaining necessary *347 federal approval and a state certificate of registration, Brooks and Kudolis immediately began making flights. On August 25, 1987, prompted by complaints from neighbors, the Bossier City Metropolitan Planning Commission ("MPC") notified appellants that such flying activities reflected the operation of an airport, which under Bossier Parish Ordinance 783 required the obtaining of a special exception use permit. Defendants objected, asserting that they did not run an "airport."
In an apparent effort to address the dispute, the Bossier Parish Police Jury passed Ordinance 3030 on July 12, 1988, specifically classifying an ultralight landing strip as a second tier land use requiring MPC approval. This categorization also ostensibly obviated any "airport" special exception permit otherwise required by Ordinance 783. Brooks subsequently applied for, and the MPC denied, authorization for his ultralight use under the new provision. Thereafter, on July 11, 1989, he received a citation for violating Ordinance 3030 by continuing to conduct flights from his property. This court, in an unpublished opinion, State v. Brooks, 22, 118, 569 So.2d 294 (La.App.2d Cir. 10/31/90), however, reversed his ensuing misdemeanor conviction. We held, at that juncture, that the operation of the ultralight field prior to the passage of Ordinance 3030 constituted a nonconforming use which could continue for not more than three years after the effective date of the enactment. We nonetheless expressly declined to determine "whether an ultralight landing strip (considered ... a type 2 use under Ord. 3030) is an airport (considered ... a type 3 use under Ord. 783)."
Later, after the three-year period for nonconforming use expired on July 12, 1991, Brooks and Kudolis continued to fly their ultralights from the subject property approximately four times per month. Further complicating matters, the police jury repealed Ordinance 3030 in September 1991, but left Ordinance 783 unchanged. Thereafter, on March 9, 1992, five neighboring landowners instituted suit for injunctive relief,[2] averring they had been specially damaged by defendants' alleged violation of the remaining zoning provision (Ordinance 783). They maintained that, to persist with ultralight flights from the acreage, defendants must acquire permission for a special exception use, the operation of an "airport."
After a hearing, the district judge held defendants' ultralight landing field to be an airport under Ordinance 783. Thus, finding plaintiffs had also established the other elements of their case, the trial court enjoined defendants from using their land in violation of the local zoning laws. This appeal followed.

Discussion

Definition of Airport
In interpreting statutory provisions, words and phrases are to be construed according to common and approved usage of the language. LSA-R.S. 1:3; Jungina v. Stafford, 535 So.2d 794 (La.App. 2d Cir. 1988). Further, clear and unambiguous wording should not be disregarded under the pretext of pursuing the spirit of the statute. LSA-R.S. 1:4; Jungina, supra. Those who enact a provision are presumed to act deliberately and with full knowledge of all existing laws on the same subject. Jungina, supra.
Cognizant that Ordinance 783 did not define the term "airport," the district court looked to Louisiana's general provisions governing aeronautics, LSA-R.S. 2:1 et seq. In a well-reasoned opinion, the trial judge noted that LSA-R.S. 2:1(9) provides:
"Airport" means any area of land or water, except a restricted landing area, which is designed for the landing and takeoff *348 of aircraft, whether or not facilities are provided for the sheltering, servicing, or repairing of aircraft or for receiving or discharging passengers or cargo; all appurtenant areas used or suitable for airport buildings or other airport facilities; and all appurtenant rights of way including easements through or other interests in air space over land or water and other protection privileges, the acquisition or control of which is necessary to insure safe approaches to the landing areas and efficient operation thereof.
After additionally turning to LSA-R.S. 2:1(3), which defines "aircraft" to mean "any contrivance ... used, or designed for navigation of, or flight in, the air," the trial judge concluded:
It is evident to this court that an ultralight craft is a contrivance used for flight in the air, and it is therefore an aircraft. It therefore follows that any land designed for landing or takeoff of aircraft, including ultralights, is an airport.
We concur in this determination that an ultralight flight park constitutes an "airport" under Ordinance 783. Cf. Brunner v. Zoning Hearing Board of Upper Makefield Township, 12 Pa.Cmwlth. 109, 315 A.2d 359 (1974), finding a heliport subject to general airfield zoning regulations. The LSA-R.S. 2:1 definitions, intended for utilization in connection with this state's wide ranging aeronautics legislation, reflect common usage.[3] In fact, defendants' first state registration certificate classified Pioneer Field as a privately used "airport." Furthermore, beyond flying their aircraft and allowing at least two others pilots to utilize the acreage, appellants have installed a wind direction device on their property, mowed the grass to make a runway, outlined the runway with cones, and built hangers for their aircraft. Certainly then, the record before us discloses the operation of an airport as envisioned by the parish ordinance.

Preemption
Appellants alternatively contend that state and federal enactments have preemptive authority over aeronautics, thus barring the parish from any regulation of airport locations. We disagree.
Similar analyses are employed, in both the state and federal spheres, to resolve preemption issues. Hildebrand v. City of New Orleans, 549 So.2d 1218 (La.1989), cert. denied, 494 U.S. 1028, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Inferior legislative power is not supplanted unless it is the clear and manifest purpose of the higher legislative body to do so, or unless the exercise of dual authority is repugnant to an indicated legislative objective. Id. Absent explicit preemptive language, the courts will measure legislative intent by examining the pervasiveness of state or federal regulatory schemes, the need for broad-based uniformity, and the danger of conflict between the enforcement of local laws and the administration of state or federal programs. Palermo Land Co. v. Planning Comm'n of Calcasieu Parish, 561 So.2d 482 (La.1990); Hildebrand, supra; cf. Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). In the present matter, unable to point to any statutes explicitly preempting zoning authority over the siting of airports, defendants argue that there exists an implied legislative intent to supersede local control.
Federal law gives the Federal Aviation Administration broad authority to regulate and control use of the navigable airspace. See 49 U.S.C. §§ 40101, 40103; City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); Garden State Farms, Inc. v. Bay, 77 N.J. 439, 390 A.2d 1177 (1978). But despite state and local control being supplanted in connection with the operation and navigation of aircraft, significant local power remains viable, especially concerning land use planning and the zoning of airport facilities. Garden State Farms, supra, and authorities therein. See also City of Burbank, supra (Rehnquist, J., dissenting); Faux-Burhans v. County Comm'rs of Frederick County, 674 F.Supp. 1172 (D.Md.1987), aff'd. 859 F.2d 149 (4th Cir.1988), cert. denied, 488 U.S. *349 1042, 109 S.Ct. 869, 102 L.Ed.2d 992 (1989). Furthermore, as shown by introduced copies of the Federal Air Regulations, 14 C.F.R. §§ 103.1-103.23, the FAA has limited its control of ultralight vehicles to airspace management. Consequently, we find no federal preemption of Bossier Parish's zoning authority to locate airports within its jurisdiction. Cf. Faux-Burhans, supra; Garden State Farms, supra.
We arrive at a similar conclusion in reference to state preemption. Louisiana's aeronautics statutes (LSA-R.S. 2:1, et seq.) and promulgated regulations governing ultralight vehicles (9 La.Reg. 417 (1983)) reveal no intent to supersede the zoning authority granted to the Bossier Parish Police jury under Act 189 of 1954, Art. 5 § 1. Our state enactments primarily focus on aircraft and pilot licensing, navigational aids maintenance, and airport funding and safety, rather than upon land use or zoning. See LSA-R.S. 2:1, et seq. Indeed, local authorities unmistakably retain broad control of areas immediately surrounding airports. See LSA-R.S. 2:381, et seq. Consequently, recognizing the special authority of local governments to exercise zoning controls, we find no conflict between Louisiana's aeronautics policy and the parish's power to regulate land use. Cf. generally St. Charles Gaming Co., Inc. v. The Riverboat Gaming Comm'n, 94-2697 (La. 01/17/95), 648 So.2d 1310; Palermo Land Co., supra; Hildebrand, supra. See also Murchison, Recent Developments in Local Government Law, 1990-1991, 52 La.Law Rev. 541 (1991).

Damages
In their final challenge to the district court injunction, defendants contend plaintiffs did not show themselves to be "specially damaged" by the zoning ordinance violation and, therefore, have no standing to bring this action.
One of the complainants, Rebecca Sanford, testified her horse had been spooked and nearly kicked her when an ultralight flew over her barn. Another plaintiff, Teresa Chewning, recounted how a low flying machine "buzzed" her house and scared her children. Neither plane belonged to defendants, but both witnesses generally concluded that the craft had been attracted by the airfield. Chewning additionally noted an occasion when Brooks taxied up and down the fence line between their properties, causing the horses in her nearby pasture to stampede.
Both sides presented real estate experts to address whether plaintiffs' neighboring property had diminished in value. Wesley Barron, a state certified appraiser, opined that a diminution in the price of appellees' land would be caused by appellants' ultralight activities. Ron Fayard, a real estate broker in the Bossier area but not a certified appraiser, testified on behalf of defendants. He noted that property in a new subdivision across the bayou from the ultralight landing area had significantly increased in value over the last few years, and that he had not observed any adverse effect on area sales caused by the nearby ultralights. On cross, however, he admitted that the subdivision land is buffered by a line of trees along the waterway.
Finding plaintiffs' expert to be more reliable, the trial judge concluded that the neighboring property had diminished in value due to the zoning violation. Of course, the effect and weight to be given such testimony depends upon the underlying facts and rests within the broad discretion of the trial judge. Middle Tenn. Council, Inc. v. Ford, 274 So.2d 173 (La.1973); Townsend v. Westinghouse Elevator Corp., 25,966 (La.App.2d Cir. 08/17/94), 641 So.2d 1022, writ denied, 94-2371 (La. 11/29/94), 646 So.2d 403. The district court also mentioned plaintiffs' testimony that the challenged ultralight activities had frightened their children and horses. Such factual findings should not be disturbed on appeal, absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978)
In evaluating an injunctive enforcement provision in Acts 1954, No. 34, authorizing a comprehensive zoning ordinance for the City of Shreveport, the supreme court indicated neighboring landowners have standing to enjoin violations when they have shown significant adverse effects upon the value and enjoyment of their property. Wright v. DeFatta, *350 244 La. 251, 152 So.2d 10 (1963). Thus, in the case sub judice, we find no error in the trial court's determination that the disclosed illegal airport activities have specially damaged plaintiffs. Cf. Howard v. Langevin, 363 So.2d 928 (La.App. 2d 1978); Irland v. Barron, 230 So.2d 880 (La.App. 2d Cir.1970). Nor are we impressed by defendants' continued emphasis on data showing their aircraft produced little or no noise in relationship to other sounds found in the area. As observed by the trial court, such evidence merely tends to negate the creation of a nuisance. The matter before us, however, is not a suit to abate a nuisance. Instead, plaintiffs seek to abate a zoning violation pursuant to Act 189 of 1954. Cf. Wright, supra.

Conclusion
For the reasons assigned, the judgment of the trial court is sustained and the injunction upheld. Costs of appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] Under both state and federal regulations, Federal Air Regulations Part 103 (14 C.F.R. § 103.1, et seq.) and 9 La.Reg. 417 (1983), an ultralight vehicle is defined as a vehicle that:

(a) is used or intended to be used for manned operation in the air by a single occupant;
(b) is used or intended to be used for recreation or sport purposes only;
(c) does not have any U.S. or foreign airworthiness certificate; and,
(d) if unpowered, weights less than 155 pounds; or
(e) if powered:
(1) weighs less than 254 pounds empty weight, excluding floats and safety devices which are intended for deployment in a potentially catastrophic situation;
(2) has a fuel capacity not exceeding 5 U.S. gallons;
(3) is not capable of more than 55 knots calibrated airspeed at full power in level flight; and
(4) has a power-off stall speed which does not exceed 24 knots calibrated airspeed.
[2] Under Acts 1954, No. 189, creating the MPC and authorizing its regulation of land use in Bossier City and unincorporated areas five miles from the city limits, Article 5 § 7 provides for injunctive relief when:

(1) the defendant's land is being used in violation of a valid zoning ordinance;
(2) the plaintiff is a neighboring or adjacent property owner; and
(3) the plaintiff is "specially damaged by such violation."
[3] Other sources contain similar definitions for "airport" and "aircraft." See, e.g., 49 U.S.C. § 40102(a)(6), (9) and (28); Webster's New Twentieth Century Dictionary 40, 41 (2d Ed.1983).