55 So.3d 1 (2010)
VIEUX CARRE PROPERTY OWNERS, RESIDENTS AND ASSOCIATES, INC. and French Quarter Citizens for the Preservation of Residential Quality, Inc.
v.
HOTEL ROYAL, L.L.C.
No. 2009-CA-0641.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 2010.
Rehearing Granted October 8, 2010.
Opinion on Rehearing January 5, 2011.
Stuart H. Smith, Alan D. Alario II, Smith Stag, L.L.C, Barry J. Cooper, Jr., Cooper Law Firm, L.L.C, New Orleans, LA, for Plaintiffs/Appellants.
*2 Harry Rosenberg, Phelps Dunbar L.L.P., Peter J. Butler, Jr., Barrett R. Stephens, Richard G. Passler, Breazeale, Sachse & Wilson, LLP, New Orleans, LA, for Hotel Royal, L.L.C., 1004-1006 Royal, L.L.C., 625 St. Philip, L.L.C. and The Melrose Group, L.L.C.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
This appeal raises the question of whether private associations have standing to prevent alleged violations of New Orleans city zoning ordinances. Because the organizations in this case have failed to demonstrate a real and actual interest in the suit, we affirm the trial court's grant of the exception of no right of action.

FACTS AND PROCEDURAL HISTORY
Appellants in this case, Vieux Carre Property Owners, Residents, and Associates, Inc., and French Quarter Citizens for the Preservation of Residential Quality, Inc., filed a petition for declaratory judgment and preliminary and permanent injunction on September 13, 2006 against Appellees, Hotel Royal, L.L.C, 1004-1006 Royal, L.L.C, 625 St. Philip, L.L.C, and The Melrose Group, L.L.C, alleging that Appellees violated various zoning ordinances. These violations, Appellants argued, threatened the character and charm of the French Quarter.
On January 4, 2007, Appellees filed Exceptions of Lack of Procedural Capacity, No Right of Action, and Prescription, asserting that Appellants lacked standing to file and prosecute their claims against Appellees and that such claims were also prescribed. Appellees further argued that Appellants, as private, non-governmental, and non-profit corporations, were improperly assuming the role of a government agency in seeking to enjoin Appellees from allegedly violating zoning ordinances of the City of New Orleans. Appellees further argued that Appellants had no right of action because they failed to allege special or actual damages to themselves, as opposed to society in general.
After a hearing on January 16, 2009, the trial court sustained Appellees' Exception of No Right of Action.[1] This appeal followed.

STANDARD OF REVIEW
"Peremptory exceptions raising the objection of no right of action are reviewed de novo on appeal as they involve questions of law." Fortier v. Hughes, 2009-0180, p. 2 (La.App. 4 Cir. 6/17/09), 15 So.3d 1185, 1186.

DISCUSSION[2]
Louisiana has adopted the U.S. Supreme Court's three-part test articulated in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), to determine whether an association has standing to *3 bring suit on behalf of its members. The Hunt test is comprised of the following three elements: 1) whether the members would otherwise be able to bring suit in their own right; 2) whether the interests the association wishes to protect are pertinent to its purpose; and 3) neither the claim asserted by the association nor the relief sought requires the participation of individual members. Louisiana Hotel-Motel Association v. Parish of East Baton Rouge, 385 So.2d 1193, 1196 (La.1980)(citing Hunt, 432 U.S. 333, 97 S.Ct. 2434 (emphasis added)). In applying Hunt, the Louisiana Supreme Court has held that to meet the first prong of the Hunt test, the association must first establish harm that is not only "present or probable for the future," but also establish harm that would occur to the members themselves.[3]Louisiana Hotel-Motel, 385 So.2d at 1197.
In this case, Appellants' petition alleges violations of the Comprehensive Zoning Ordinances of the City of New Orleans with regard to improper expansion and conversion of buildings. Specifically, Appellants urge the following as damages for these alleged violations:
Failure to enjoin [Appellees'] expansion threatens the architectural, historical, cultural and aesthetic integrity, and values of the Vieux Carre. De facto approval of [Appellees'] illegal expansion adversely affects the tout ensemble of the Vieux Carre and opens the entire Vieux Carre to significant alteration to the character and massing of its existing historic buildings. If not abated, the deterioration of the quaint and distinctive character of the Vieux Carre will be permanently and adversely affected.
The expansion of [Appellees' property], via the conversion of the adjacent apartment building to additional rooms and adding Bar 625 and Diner 625 as [ ] amenities, disrupts the scale and low density of the surrounding buildings and the residential character and environment. Furthermore, [Appellees'] illegal expansion has significantly harmed the historic community and will create additional traffic resulting in congestion, noise, and other activities destructive to the French Quarter.
We find that Appellants failed to meet the first prong of the Hunt test because a concrete injury to the members of the Association has not been established in this particular case; rather, Appellants have alleged injury to the Vieux Carre/French Quarter neighborhood as a whole. The damages alleged allude to the general deterioration of the "quaint and distinctive character" of the Vieux Carré rather than asserting an actual injury to its members. Whether the character or charm of a neighborhood has deteriorated is purely subjective; as such, it is not susceptible of measurement. Moreover, other alleged damages, such as the possibility of the creation of additional traffic, congestion, and noise as a result of Appellees' alleged zoning violations, are hypothetical in this case, and Appellants have failed to show that such other alleged damages are "present or probable for the future." See Louisiana Hotel-Motel, 385 So.2d at 1197. Accordingly, Appellants have not shown that there exists, either on their part or the part of their members, any real or actual *4 interest in enjoining alleged violations. Id. Appellants' allegations are therefore insufficient to establish standing, as Hunt and Louisiana law both mandate a showing of harm, present or probable for the future, to the members themselves. Hunt, 432 U.S. 333, 97 S.Ct. at 2441; Louisiana Hotel-Motel, 385 So.2d at 1197.
The Louisiana Supreme Court recognized that in Hunt, "the association which brought the action ... had shown clear, direct economic injury to the members thereof." Louisiana Associated General Contractors, Inc. v. State of Louisiana, 95-2105 (La.3/8/96), 669 So.2d 1185, 1191, n. 4 (emphasis added). The Louisiana Supreme Court also applied Hunt's three-part test in Ramsey River Road Property Owners Association v. Reeves, noting that "[i]t is axiomatic" that the plaintiff property owners' association "have a `real and actual interest' in the action he asserts before the courts will entertain his suit." Ramsey River Road Property Owners Association v. Reeves, 396 So.2d 873, 874 (La.1981).
In contrast, as was the case in Louisiana Hotel-Motel, Appellants "have not shown that the members of their organizations could bring a suit; they have not shown any harm (present or probable for the future) which would occur to the members." Louisiana Hotel-Motel, 385 So.2d at 1197.[4] Considering the incorporeal injuries alleged in this case, we find that Appellants have failed to establish any clear, direct economic injury which would occur to the members themselves. See Louisiana Associated General Contractors, 669 So.2d at 1191. Therefore, we find that Appellants "have shown neither standing to prosecute nor an injury which might have been redressed."[5]Louisiana Hotel-Motel, 385 So.2d 1193, 1197.
*5 It is unnecessary to address the second[6] or third prong of the Hunt test, as a finding that one of the prongs of the test is not met is dispositive. We note, however, that with respect to the third prong, Appellants argue that because the suit is non-pecuniary in nature, it is unnecessary for any one member to participate in the lawsuit. While Appellants are correct in that the suit seeks injunctive and declaratory relief, Appellants have nevertheless failed to demonstrate any harm, present or probable, which would occur to the members. See Louisiana Hotel-Motel Association, 385 So.2d at 1197.
For the foregoing reasons, the trial court's judgement is hereby affirmed.
AFFIRMED.
BAGNERIS, J., dissents with reasons.
BAGNERIS, Judge, dissents with reasons.
I respectfully dissent from the majority's finding that the organizations in this case have failed to demonstrate a real and actual interest in the suit.
The essential function of the peremptory exception of no right of action is to test whether the plaintiff has a real and actual interest in the suit. La. C.C.P. art. 927(A)(6); La.Code of Civ. Proc. Art. 681. Its purpose is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. It assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Wirthman-Tag Construction Co., L.L.C. v. Hotard, 00-2298, 00-2299, pp. 2-3 (La.App. 4 Cir. 12/19/01), 804 So.2d 856, 859.
Applying the criteria in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), I find that Plaintiffs do have standing to bring this suit against defendants because (1) they have shown that the members of their organizations could bring a suit because of the harm (present or probable for the future) which would occur to the members; (2) they have shown the purpose for which their organizations were formed and why the claims being asserted relate to the purpose of the organization; and (3) they have shown that the relief being sought does not require the participation of the individual members. Accordingly, I would reverse the judgment of the trial court.

ORDER
Considering the application for rehearing filed by Appellants in the above-captioned matter, the request for a rehearing *6 is hereby GRANTED. The request for an en banc rehearing is DENIED.
JONES, J., dissents.
JONES, J., dissenting.
I respectfully dissent and would deny the application for rehearing.

ON REHEARING GRANTED
ROLAND L. BELSOME, Judge.
Appellants, Vieux Carre Property Owners, Residents, and Associates, Inc. and French Quarter Citizens for the Preservation of Residential Quality, Inc., appealed the trial court's grant of Appellees' Exception of No Right of Action. After hearing arguments, this Court affirmed the trial court's judgment. Vieux Carre Property Owners, Residents and Associates, Inc. v. Hotel Royal, L.L.C, 2009-0641 (La.App. 4 Cir. 2/3/10), 2010 WL 395912, 55 So.3d 1. Rehearing in the matter was granted and arguments heard on October 20, 2010.

FACTS AND PROCEDURAL HISTORY
Appellants filed a petition for declaratory judgment and for preliminary and permanent injunction against Appellees, Hotel Royal, L.L.C, 1004-1006 Royal, L.L.C, 625 St. Philip, L.L.C, and The Melrose Group, L.L.C, alleging that Appellees had violated various local zoning ordinances. In response, Appellants filed Exceptions of Lack of Procedural Capacity, No Right of Action, and Prescription, asserting that Appellants' claims were prescribed and that Appellant lacked standing and a right of action. After a hearing, the trial court sustained Appellees' Exception of No Right of Action, and this Court affirmed.
We granted rehearing in the matter to expand upon our reasoning in this Court's previous decision.

STANDARD OF REVIEW
Judgments sustaining an exception of no right of action are reviewed de novo. Fortier v. Hughes, 2009-0180, p. 2 (La.App. 4 Cir. 6/17/09), 15 So.3d 1185, 1186.

DISCUSSION
Whether Appellants have standing to bring suit on behalf of its members involves a three-part inquiry. See Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); Louisiana Hotel-Motel Association v. Parish of East Baton Rouge, 385 So.2d 1193, 1196 (La.1980). The three-part test set forth by the United States Supreme Court, and adopted by the Louisiana Supreme Court, involves first determining whether the members of the organization would otherwise be able to bring suit in their own right; second, whether the interests the association wished to protect were pertinent to its purpose; and third, the organization must also establish that neither the claim asserted by the association nor the relief sought required the participation of individual members.[1]Id.
Appellants' petition for damages alleged that failure to enjoin the expansion of Appellees' property "threatens the architectural, historical, cultural and aesthetic integrity, and values of the Vieux Carre" and "adversely affects the tout ensemble of the Vieux Carre and opens the entire Vieux Carre to significant alteration of the character and massing of its existing historic buildings" which would "adversely affect[]" *7 the "quaint and distinctive character of the Vieux Carre." The petition also asserted that Appellees' expansion would also "disrupt[ ] the scale and low density of the surrounding buildings and the residential character and environment" and "will create additional traffic resulting in congestion, noise, and other activities destructive to the French Quarter."
In affirming the decision of the trial court, this Court determined that Appellants did not satisfy the first prong of the three-part test because Appellants failed to establish harm that was "present or probable for the future" for its members and also failed to demonstrate "clear, direct economic injury to [its] members." Louisiana Associated General Contractors, Inc. v. State of Louisiana, 95-2105 (La.3/8/96), 669 So.2d 1185, 1191, n. 4; see also Louisiana Hotel-Motel, 385 So.2d at 1197. As the Hunt test is phrased in conjunctive terms, the failure to satisfy any part of the inquiry is dispositive, and further examination is unnecessary.
It is well-settled in Louisiana that a plaintiff must have a real and actual interest in the action he asserts. La. C.C.P. art. 681. Without a showing of a special interest that is separate and distinct from the interest of the general public, a plaintiff may not proceed. League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441, 447 (La.1980); Richardson v. Reeves, 600 So.2d 138, 140 (La.App. 2 Cir. 1992).
Applying the first prong of the Hunt!Louisiana Hotel-Motel test, we find that the first threshold requirement, the demonstration of harm that is present or probable for the future, was simply not established in this case. See Hunt, supra. Appellants merely asserted that Appellees' alleged zoning violations would result in a decline in the charm and distinctive character of the neighborhood as a whole, the Vieux Carre. Not only is such an allegation entirely subjective, it is also not susceptible of measurement. Furthermore, the hypothetical possibility of increased congestion and noise as a result of the alleged zoning violations also does not rise to the level of "present or probable future harm." See Hunt, supra.
In Guillot v. Brooks, 26,544, p. 1 (La. App. 2 Cir. 3/1/95), 651 So.2d 345, 346-347, a case relied upon by Appellants, a group of neighbors sought injunctive relief and the enforcement of a zoning ordinance. As this Court previously noted, Guillot involved individual private landowners. See Vieux Carre, supra, at n. 5. The Guillot plaintiffs alleged violations of local zoning ordinances and damages as a result of a neighbor's use of his property as a landing strip for light aircraft. Guillot, p. 1, 651 So.2d at 347. In upholding the trial court's determination that the plaintiffs had standing to sue to enforce zoning violations, the Court acknowledged the evidence that was submitted with respect to specific and concrete damages sustained by the individual landowners as a direct result of the low-flying aircraft:
One of the complainants, Rebecca Sanford, testified her horse had been spooked and nearly kicked her when an ultralight [aircraft] flew over her barn. Another plaintiff, Teresa Chewning, recounted how a low flying machine "buzzed" her house and scared her children. Neither plane belonged to defendants, but both witnesses generally concluded that the craft had been attracted by the airfield. Chewning additionally noted an occasion when Brooks taxied up and down the fence line between their properties, causing the horses in her nearby pasture to stampede.
Id. at pp. 5-6, 651 So.2d at 349. Additionally, the trial court was presented with *8 detailed evidence from real estate experts regarding the issue of whether the plaintiffs' property had diminished in value as a result of the zoning ordinance violations:
Both sides presented real estate experts to address whether plaintiffs' neighboring property had diminished in value. Wesley Barron, a state certified appraiser, opined that a diminution in the price of appellees' land would be caused by appellants' ultralight activities. Ron Fayard, a real estate broker in the Bossier area but not a certified appraiser, testified on behalf of defendants. He noted that property in a new subdivision across the bayou from the ultralight landing area had significantly increased in value over the last few years, and that he had not observed any adverse effect on area sales caused by the nearby ultralights. On cross, however, he admitted that the subdivision land is buffered by a line of trees along the waterway.
Id. at p. 6. Considering the evidence that plaintiffs had presented with regard to individualized, specific damages, as well as evidence of harm resulting from the landing strip's operation, the Court held that the plaintiffs had established "significant adverse effects upon the value and enjoyment of their property." Id. Notably, the Court also held that the airport's activities "specially damaged [the] plaintiffs." Id. at p. 7.
Similarly, in Redfearn v. Creppel, 436 So.2d 1210, 1211 (La.1983), aff'd in part, rev'd in part on other grounds, 455 So.2d 1356 (La.1984), also relied upon by Appellants, involved two plaintiff homeowners seeking injunctive relief from a hotel's alleged violations of zoning ordinances. In Redfearn, in contrast to the instant case, the plaintiffs put on evidence of actual traffic congestion, including the blockage of individual driveways by parked vehicles, and increased litter in the area:
Carol Jean Gibson is the owner of the property located at 1615 Peniston Street, which is within 100 feet of The Columns Hotel. She testified that as a result of the operation of the bar and restaurant at The Columns there has been more congested parking in the area, incidents in which her driveway is blocked by parked vehicles, an increase of trash which appears on her lawn between 10 p.m. and 7:30 a.m., and she sees "drunks" coming from the direction of The Columns.
Lynn Redfearn, a resident of 3717 Carondelet Street, which is one block from The Columns, attested to the dangerous and congested traffic and parking conditions which have occurred since the opening of the bar at the Columns Hotel.
The incidents of increased traffic and litter resulting from the operation of The Columns bar and restaurant was corroborated by the testimony of John Geiser, an officer of the St. Charles Avenue Committee.
We are satisfied that the plaintiffs have made a sufficient showing of harm to entitle them to seek injunctive relief in this case.
Id. at 1213.
Appellants argue that Vieux Carre Property Owners, Residents and Associates, Inc. v. Decatur Hotel Corporation, which involved an appeal by an association seeking declaratory and injunctive relief for an alleged violation of New Orleans zoning laws, is analogous to the instant case. 1999-0731, p. 1, 746 So.2d 806, 807 (La.App. 4 Cir. 11/10/99). Defendants filed an exception of no cause of action and/or no right of action, arguing that "the Association d[id] not list any damages in its petition and, hence, the Association has no cause of action." Decatur Hotel, p. 2, 746 So.2d at 807. The trial court granted *9 the exceptions and dismissed the petition with prejudice. Id. On appeal, the Court "agree[d] with the trial court that the Association failed to state a cause of action," but remanded to allow the Association the opportunity to amend its petition to assert a cause of action. Id. at p. 5-6, 808-809.
As previously noted, the three-pronged Hunt test was not applied in Decatur Hotel. The Court referenced Ramsey, Louisiana Hotel-Motel, and Associated General Contractors, acknowledging that Louisiana Courts have previously held that an organization may assert a claim on behalf of its members. Decatur Hotel, 746 So.2d 806, 808-809. Next, the Court cited Redfearn v. Creppel and Guillot v. Brooks for the principle that neighboring residents and individual landowners, respectively, may file suit to enforce zoning ordinances. Id. at 809. The Court had already determined that the Association's petition failed to state any damages sufficient to assert a cause of action; thus, the Court could not conduct a Hunt analysis because no damages had been asserted in the petition. Accordingly, the statement in Decatur Hotel that the Association could assert a claim on behalf of its members is best understood as an affirmation of the Louisiana jurisprudence holding that an association may file suit on behalf of its members, provided that all three elements of the Hunt test are satisfied.
With respect to Gar-den District Property Owners Association v. City of New Orleans, et al, 98 So.2d 922 (La.App. 4th Cir.1957), it is important to note that it was decided two decades prior to Hunt decision; thus, the Court did not conduct the three-part test when determining whether an association had standing. Likewise, Vieux Carre Property Owners and Associates, Inc. v. City of New Orleans, 246 La. 788, 167 So.2d 367 (La.1964) also pre-dates Hunt and Louisiana Hotel-Motel. While Garden District and VCPRA are indeed still good law, neither can offer guidance with respect to a Hunt analysis. Pursuant to Supreme Court and Louisiana jurisprudence, the Hunt/Louisiana Hotel-Motel test must be applied when determining whether an association has standing to assert a claim on behalf of its members, and all three elements of the test must be satisfied. See Hunt, supra; Louisiana Hotel-Motel, supra.
With respect to Ramsey River Road Property Owners Association, Inc. v. Reeves, 396 So.2d 873, 874 (La.1980), this Court finds that the instant matter is factually distinguishable. In Ramsey, the complained-of activity was construction of a bridge on the Bogue Falaya River, which the plaintiff association argued was navigable; thus, defendants could not construct the bridge without first complying with certain state and federal procedures. Ramsey, 396 So.2d at 875.
The facts of Hunt are also plainly distinguishable from the instant case. In Hunt, the issue was a North Carolina law which impacted apple growers from Washington State, the Nation's largest producer of apples. Hunt, 432 U.S. at 336, 97 S.Ct. at 2438. The apple industry in Washington employed "a stringent, mandatory inspection program" by Washington's Department of Agriculture requiring apples shipped to other states "be tested under strict quality standards and graded accordingly." Id. The Washington apple grades were equal or superior to the USDA standards, and the scheme cost the Washington apple growers approximately one million dollars per year. Id.
North Carolina adopted an administrative regulation that "required all closed containers of apples shipped into or sold in the State to display either the applicable USDA grade or none at all," thus expressly *10 prohibiting individual State grades, such as the Washington apple grades. Id. at 337. The impact of such a regulation upon the Washington apple growers was enormous. "Washington apple growers annually ship in commerce approximately 40 million closed containers of apples, nearly 500,000 of which eventually find their way into North Carolina stamped with the applicable Washington State variety and grade." Id. at 337-338. The growers purchase containers that are pre-labeled with the various apple grades and varieties, fill the containers after harvest and place them in cold-storage warehouses. Id. at 338. The apples are shipped from the warehouse to meet demand throughout the year, and "after February 1 of each year, they constitute approximately two-thirds of all apples sold in fresh markets in this country." Id. at 2439. Thus, the resulting economic harm to the Washington apple growers forced to conform to the regulation was obvious to the Court:
Since the ultimate destination of these apples is unknown at the time they are placed in storage, compliance with North Carolina's unique regulation would have required Washington growers to obliterate the printed labels on containers shipped to North Carolina, thus giving their product a damaged appearance. Alternatively, they could have changed their marketing practices to accommodate the needs of the North Carolina market, i.e., repack apples to be shipped to North Carolina in containers bearing only the USDA grade, and/or store the estimated portion of the harvest destined for that market in such special containers. As a last resort, they could discontinue the use of the preprinted containers entirely. None of these costly and less Inefficient options was very attractive to the industry. Moreover, in the event a number of other States followed North Carolina's lead, the resultant inability to display the Washington grades could force the Washington growers to abandon the State's expensive inspection and grading system which their customers had come to know and rely on over the 60-odd years of its existence.
Id. at 338. Consequently, as a direct result of the regulation, the Washington apple growers were plainly "forced to alter their long-established procedures, at substantial cost, or abandon the North Carolina market [at a loss of 500,000 containers of apples]."[2]Hunt, 432 U.S. at 340, 97 S.Ct. at 2440 (emphasis added).
*11 In this case, however, the harm resulting from the complained-of activity is alleged on behalf of the Vieux Carre neighborhood as a whole, and this Court cannot provide Appellants with relief. See League of Women Voters of New Orleans, 381 So.2d at 447; Richardson v. Reeves, 600 So.2d at 140. Furthermore, the harm alleged by Appellants is generally incorporeal, subjective, and hypothetical, in marked contrast to the damages alleged by the plaintiff associations in the cases cited previously herein.
Additionally, the alleged harms are not sufficiently concrete to pass muster under Louisiana Hotel-Motel. The Louisiana Supreme Court has recognized that to establish standing to assert a claim on behalf of its members, an association must demonstrate actual economic injury. Louisiana Hotel-Motel, 385 So.2d at 1197. In finding that a group of plaintiff restaurant associations had established "neither standing to prosecute nor an injury which might have been redressed," the Court noted that Auto Dealers,[3] a case upon which plaintiffs had mistakenly relied, "not only included individual dealers among the plaintiffs, but also demonstrated actual, substantial economic injury to the dealers." Id. (emphasis added). Accordingly, the Louisiana Supreme Court held that associations' position was not analogous to that of the Auto Dealers plaintiffs, and standing could not be established. Id. Similarly, we find that Appellants in the instant case have failed to demonstrate a concrete economic injury to its members sufficient to satisfy the test for standing. See id.
The second prong of the inquiry, whether the interests Appellants sought to protect were relevant to its organization's purpose, was arguably met; the VCPORA's mission statement makes reference to "maintain[ing] [the French Quarter's] quant and distinctive character." As previously noted, however, satisfaction of only one of the elements of the three-part inquiry is insufficient to establish standing. Vieux Carre Property Owners, supra, at *8.
Finally, although unnecessary to do so, we consider whether the claim asserted or the relief sought by the association requires the participation of the individual members. See Hunt, supra. We acknowledge that the injunctive relief sought by Appellants in this case may not necessarily require the participation of the individual members. See Louisiana Associated Gen. Contractors, Inc. v. State Through Div. of Admin., Office of State Purchasing, 95-2105, p. 7 (La.3/8/96), 669 So.2d 1185, 1191 (noting that "because the suit merely seeks injunctive and declaratory *12 relief, as opposed to monetary damages on behalf of individual contractors, neither the claim asserted nor the relief requested require the participation of individual members in the lawsuit"). Nevertheless, even if Appellants satisfy this element, Appellants fail to establish standing because the first prong of the test has not been met.
For the foregoing reasons, the trial court's judgment is affirmed.
AFFIRMED
BAGNERIS, J., Dissents with Reasons.
BAGNERIS, J., Dissents with Reasons.
I respectfully dissent from the majority's finding that the organizations in this case have failed to demonstrate a real and actual interest in the suit.
The essential function of the peremptory exception of no right of action is to test whether the plaintiff has a real and actual interest in the suit. La. C.C.P. art. 927(A)(6); La.Code of Civ. Proc. Art. 681. Its purpose is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. It assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. Wirthman-Tag Construction Co., L.L.C. v. Hotard, 00-2298, 00-2299, pp. 2-3 (La.App. 4 Cir. 12/19/01), 804 So.2d 856, 859.
Applying the criteria in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), I find that Plaintiffs do have standing to bring this suit against defendants because (1) they have shown that the members of their organizations could bring a suit because of the harm (present or probable for the future) which would occur to the members; (2) they have shown the purpose for which their organizations were formed and why the claims being asserted relate to the purpose of the organization; and (3 they have shown that the relief being sought does not require the participation of the individual members. Accordingly, I would reverse the judgment of the trial court.
NOTES
[1] At the hearing, the trial court questioned counsel for Appellants whether the alleged violations should have instead been brought before Vieux Carre Commission:

Mr. Smith:
Well, there was [sic] proceedings in the Vieux Carre Commission and those proceedingsthose administrative proceedings are what they are. We have a right to enjoin
The Court:
In other words, it didn't go the way you wanted it to go.
Mr. Smith:
No, no, that's notI wasn't really involved in that aspect of the case.
Mr. Rosenberg:
I was, your Honor, and that's correct.
[2] Appellants do not list assignments of error for review.
[3] The Louisiana Supreme Court has also acknowledged that "[w]hether incorporated or unincorporated, the right that any association has to assert a cause of action before a court in this state is limited to the assertion of a right which belongs to that association." Louisiana Hotel-Motel, 385 So.2d at 1196; see also La. C.C.P. art. 861 ("Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts.").
[4] The Louisiana Supreme Court has also recognized the "concrete, and not merely hypothetical, `injury in fact' or invasion of its legally protected interests" requirement for an association to establish standing. Louisiana Associated General Contractors, Inc. v. State of Louisiana, 95-2105 (La.3/8/96), 669 So.2d 1185, 1192 (citing Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1983)).
[5] The cases relied upon by Appellants are easily distinguished from the fact pattern of the instant case. In Redfearn v. Creppel, when addressing the issue of standing, this Court cited to testimony from two plaintiff homeowners, who both attested to specific harms resulting from the hotel's operations, which included blocked driveways, parking congestion, and an increase in litter and dangerous traffic. Redfearn v. Creppel, 436 So.2d 1210, 1213, aff'd in part, rev'd in part on other grounds, 455 So.2d 1356 (La.1984). Thus, the necessary showing of harm, present or probable for the future, was met. See id. Even in that case, this Court recognized that an individual's right to seek injunctive relief must be established by "a showing that he would be materially and adversely affected in the enjoyment of his home as a result of his neighbor's violation of the zoning ordinances." Id. (emphasis added).

Likewise, Guillot v. Brooks also involved individual private landowners. The landowners sought to enjoin a neighboring landowner from using his property as a landing strip. Guillot v. Brooks, 26,544 (La.App. 2 Cir. 3/1/95), 651 So.2d 345, The Second Circuit found that plaintiffs demonstrated that they were specially damaged because the zoning violations had diminished the plaintiffs' property values. Guillot, 651 So.2d at 349.
Additionally, Vieux Carre Property Owners, Residents and Associates, Inc. v. Decatur Hotel Corporation is inapplicable to the facts of the instant case. In Decatur Hotel, when addressing Defendants' argument that an association did not have a right to enforce an action for a zoning violation, this Court stated that the issue of whether an organization has standing to assert a claim on behalf of its members had been answered in the affirmative by the Louisiana Supreme Court. Decatur Hotel, 99-0731, p. 5 (La.App. 4 Cir. 11/10/09), 746 So.2d 806, 809 (citing Ramsey, supra ). This Court also acknowledged the well-settled law that private landowners may enjoin neighboring landowners from violating city ordinances. Id. (citing Redfearn v. Creppel, 436 So.2d at 1213). Notably, this Court ultimately found that the Association nevertheless failed to state a cause of action in their petition, affirming Defendants' exception of no cause of action; thus, this Court did not apply the Supreme Court's three-part Hunt test to determine whether the Association met the three requirements for standing. See id.
[6] The second prong of the Hunt test, whether the interests Appellants seek to protect are relevant to the organizations' purpose, has arguably been established, as the VCPORA's mission statement references "preserv[ing] the Vieux Carre as a national treasure, to maintain its quaint and distinctive character, and to achieve in that historic, living neighborhood, a quality of life which can be enjoyed by its residents, fellow citizens, businesses, and visitors." Similarly, the FQCPRQ's mission is "to preserve the residential quality in the French Quarter, as well as the historical character and architecture in the Vieux Carre." However, the Hunt test is plainly articulated in conjunctive terms; thus, satisfaction of only one of the elements is insufficient to establish standing.
[1] As previously noted, a review of the record evidenced that Appellants brought the same claims before the Vieux Carre Commission, but that attempt to enjoin Appellees before the VCC was unsuccessful. Vieux Carre Property Owners, Residents and Associates, Inc. v. Hotel Royal, L.L.C, 2009-0641 (La.App. 4 Cir. 2/3/10), 2010 WL 395912, 55 So.3d 1, n. 1.
[2] Additionally, with regard to the analysis of the amount-in-controversy claim, the Supreme Court recognized the economic losses that the members of the apple industry had already sustained and were certain to incur in the future:

Here the record demonstrates that the growers and dealers have suffered and will continue to suffer losses of various types. For example, there is evidence supporting the District Court's finding that individual growers and shippers lost accounts in North Carolina as a direct result of the statute. Obviously, those lost sales could lead to diminished profits. There is also evidence to support the finding that individual growers and dealers incurred substantial costs in complying with the statute. As previously noted, the statute caused some growers and dealers to manually obliterate the Washington grades from closed containers to be shipped to North Carolina at a cost of from 5 to 15 cents per carton. Other dealers decided to alter their marketing practices, not without cost, by repacking apples or abandoning the use of preprinted containers entirely, among other things. Such costs of compliance are properly considered in computing the amount in controversy. Buck v. Gallagher, supra; Packard v. Banton, supra; Alhvay Taxi, Inc. v. City of New York, 340 F.Supp. 1120 (S.D.N.Y.), aff'd, 468 F.2d 624 (C.A.2 1972). In addition, the statute deprived the growers and dealers of their rights to utilize most effectively the Washington State grades which, the record demonstrates, were of long standing and had gained wide acceptance in the trade. The competitive advantages thus lost could not be regained without incurring additional costs in the form of advertising, etc. Cf. Spock v. David, 502 F.2d 953, 956 (C.A.3 1974), rev'd on other grounds, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976). Moreover, since many apples eventually shipped to North Carolina will have already gone through the expensive inspection and grading procedure, the challenged statute will have the additional effect of causing growers and dealers to incur inspection costs unnecessarily.
Both the substantial volume of sales in North Carolina the record demonstrates that in 1974 alone, such sales were in excess of $2 million and the continuing nature of the statute's interference with the business affairs of the Commission's constituents, preclude our saying "to a legal certainty," on this record, that such losses and expenses will not, over time, if they have not done so already, amount to the requisite $10,000 for at least some of the individual growers and dealers. Hunt, 432 U.S. 333, 347-48, 97 S.Ct. 2434, 2443-44, 53 L.Ed.2d 383 (emphasis added)(footnote omitted).
[3] Louisiana Independent Auto Dealers Association v. State, 295 So.2d 796 (La. 1974).